2008-NMCA-016

177 P.3d 1067

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Derrick ERVIN, Defendant–Appellant.**

**No. 25,887.**

Court of Appeals of New Mexico.

Oct. 10, 2007.

Certiorari Denied, No. 30,739, Jan. 22, 2008.

Gary K. King, Attorney General Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Convicted of one count of criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, § 30–9–11(A), (C) (2003), five counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, § 30–9–13(A) (2003), one count of tampering with evidence, contrary to NMSA 1978, § 30–22–5 (2003), fourteen counts of sexual exploitation of children by manufacturing of child pornography, contrary to NMSA 1978, § 30–6A–3(D) (2001), and four counts of sexual exploitation of children by possession of child pornography, contrary to Section 30–6A–3(A), Defendant Derrick Ervin appeals. We reverse two of Defendant's convictions for CSCM as a violation of double jeopardy and affirm his remaining convictions.

## FACTS AND PROCEDURAL HISTORY

{2} Defendant's wife, Child's mother, found compromising pictures of Child, who was Defendant's step-daughter, on the family's home computer. When confronted about the pictures, Defendant tore the computer cables out of the wall, threw the computer down onto a porch, destroyed the hard drive with barbells, and disposed of the computer into a garbage receptacle. Defendant's wife called the police, who searched the home and found a digital camera containing more compromising photographs of Child. They also found other, unrelated child pornography.

{3} A criminal information was filed on February 3, 2004, charging Defendant with multiple crimes. Defendant waived his right to a preliminary hearing. On December 30, 2004, pursuant to a court order and prior to the commencement of trial, Child gave a videotaped deposition in lieu of her trial testimony. Prior to Child's deposition, the State informed Defendant if Child testified that Defendant had penetrated her in any way, it would add additional charges of CSPM. Defendant agreed to this arrangement. During the deposition, Child testified that Defendant licked her vagina and gave her a full-body massage. Defendant declined to cross-examine Child during the deposition.

{4} On January 3, 2005, the State filed an Amended Criminal Information, adding a charge of CSPM, and removing eight previously charged sexual exploitation of children counts. There was no preliminary hearing on the charge of CSPM, and Defendant did not waive a preliminary hearing. On January 5, 2005, before trial, the State told the district court of the prior agreement with Defendant that a charge of CSPM could be added if Child was able to articulate the necessary evidence. During the same conversation with the district court, Defendant indicated to the State that he would be ready to proceed to trial. The district court judge asked Defendant if he understood the addi-

tional charge and Defendant said that he understood. Defendant entered pleas of not guilty to all of the charges. The trial then commenced.

{5} After the defense rested, Defendant moved for a mistrial. Defendant alternatively moved to dismiss the CSPM count, based on its late addition to the charges and because Defendant did not cross-examine Child regarding penetration during the deposition because the CSPM count had not yet been added. Defendant acknowledged the agreement with the State regarding the additional charge, but contended that he did not think Child's deposition testimony would be sufficient to support a charge of CSPM. Defendant also argued that he was effectively denied cross-examination because the district court would not allow the defense to present evidence from Defendant's parents and Child's mother to rebut Child's allegations.

{6} Defendant's ten issues on appeal generally fall into four categories: (1) evidentiary errors by the district court, in allowing testimony from the following witnesses: the sexual assault nurse examiner (SANE), Detective Yoakum, and Child's grandmother; (2) procedural errors by the district court, in allowing the amendment of the criminal information, refusing to give a jury instruction for a lesser-included charge of CSCM, and depriving Defendant of a right to present a defense; (3) a violation of Defendant's right to be free from double jeopardy; and (4) general errors by the district court, in allowing a conviction where there was insufficient evidence, and cumulative error. While we agree with Defendant concerning a violation of the double jeopardy rule, we do not find support for his other arguments.

## DISCUSSION

### I. Evidentiary Issues

### A. The SANE Nurse's Testimony Regarding Child's "Vaginal Vault"

{7} Defendant argues that the SANE nurse's testimony that she could see Child's "vaginal vault" is reversible error. Prior to trial, Defendant made a motion in limine to the district court regarding the SANE nurse's testimony. The State advised the district court that it would not be inquiring

into penetration, although it conceded that it would broach the topic if Defendant were to open the door. The State also informed the district court that it had already instructed the SANE nurse to "stay away from" the topic of penetration.

{8} The SANE nurse testified about her examination of Child. Her testimony was as follows: "[T]o visualize the vagina, I take my hands and gently grab ahold of the labia, pull out and open, and on someone of [Child's] age I shouldn't be able to see into the vagina vault which I was able to do." Defendant immediately objected, approached the court for a bench conference, asked the district court for a mistrial, and twice requested that the court strike the nurse's testimony. The district court ruled that as long as the SANE nurse did not state any conclusions, he would continue to allow her to testify. The district court then allowed the State to continue its examination, without striking the testimony. Defendant argues on appeal that the testimony violated Rules 11–401 and 11–403 NMRA.

{9} We review the district court's evidentiary ruling under an abuse of discretion standard. *State v. Saavedra*, 103 N.M. 282, 284, 705 P.2d 1133, 1135 (1985). An abuse of discretion occurs when the district court's decision can be characterized as "clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted). "Abuse of discretion has also been defined as being clearly against the logic and effect of the facts and circumstances before the court." *State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993).

{10} Defendant argues that the testimony violated Rule 11–401 because it was not relevant to the charge of CSPM. Rule 11–401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We agree with Defendant that the SANE nurse's testimony was not strictly relevant to the charge of CSPM, charging that Defendant "licked" Child's vagina. Although the State did not do anything to elicit the testimony given by the SANE nurse, it obvi-

ously did not prepare her as it said it had, since when asked about how she performed the exam, she proffered this irrelevant, possibly inflammatory testimony. We worry because of the possibility to infer a connection between an "enlarged vaginal vault" and penetration as a cause. This testimony invites jurors to speculate from an irrelevant fact about why Child's "enlarged vaginal vault" was of import in this case.

{11} We defer to the discretion of the district court in the admission or exclusion of such evidence. *Saavedra,* 103 N.M. at 284, 705 P.2d at 1135. We also apply a harmless error standard to the admission of evidence. *State v. Gonzales,* 2000–NMSC–028, ¶ 32, 129 N.M. 556, 11 P.3d 131. Although we agree with Defendant that the evidence was not relevant and was potentially troublesome, we cannot say that the testimony resulted in harmful error. "Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991). We cannot hold that the admission of the SANE nurse's testimony was harmful error, contributing to Defendant's conviction, in light of the full scope of her testimony.

{12} Although the SANE nurse's testimony might rise to an inference of vaginal penetration, there was no other testimony at trial specifically regarding penetration. Indeed, the SANE nurse herself testified on both direct and cross-examination that Child never told her that Defendant touched her vagina. The SANE nurse did not explain what she meant by an enlarged vaginal vault, nor was this testimony emphasized again by the State or the district court. The jury was instructed to find Defendant guilty of CSPM if the State proved the following elements beyond a reasonable doubt: "The [D]efendant caused [Child] to engage in cunnilingus or caused the insertion, to any extent, of a tongue into the vulva or vagina of [Child.]" The jury was further instructed that "cunnilingus" included touching the edge or inside of the female sex organ with the tongue or lips. *See, e.g., State v. Paiz,* 2006–NMCA–144, ¶ 52, 140 N.M. 815, 149 P.3d 579. We cannot conclude from the SANE nurse's testimony, that the jury inferred that Defendant inserted his tongue into Child's vagina to cause the observed condition, when even Child's testimony indicates that he only "licked" her vagina. We therefore hold that the SANE nurse's statement was not prejudicial to Defendant and could not have reasonably affected the jury's verdict.

**B. The SANE Nurse's Testimony Was Not Inadmissible Hearsay**

{13} Defendant argues that the SANE nurses's testimony that child told her that Defendant had once given Child a massage, touching her breasts and buttocks, was inadmissible hearsay evidence and bolstered Child's testimony. The SANE nurse testified that she "asked [Child] if [Defendant] had touched her, and she said that he gave her a full body massage once touching her breasts and her butt, but not her vagina." Because this issue was not preserved at trial, Defendant complains of both plain and fundamental error.

{14} Defendant would be entitled to relief if either plain error or fundamental error occurred, even if Defendant did not raise an objection at trial. *State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). "In either case, we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted).

{15} "To establish plain error, the error complained of must have affected substantial rights[.]" *Id.* (internal quotation marks and citation omitted). Defendant relies on *Alberico* for the proposition that an expert may not testify regarding the perpetrator of a crime. *See generally Alberico,* 116 N.M. 156, 861 P.2d 192. However, Defendant only points us to the portion in the opinion which states that an expert may not testify as to the identity of the perpetrator of the crime, and fails to read further in the opinion. Our Supreme Court stated: "Incidental verification of victim's story or indirect bolstering of her credibility, however, is not by itself improper. All testimony in the

prosecution's case will tend to corroborate and bolster the victim's story to some extent." *Id.* at 176, 861 P.2d at 211. The testimony in this case involved one statement by the SANE nurse. We cannot say that this one statement resulted in improper bolstering.

{16} "[F]undamental error will be found only when there exist circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Martinez,* 2002–NMSC–008, ¶ 9, 132 N.M. 32, 43 P.3d 1042 (internal quotation marks and citation omitted). However, Defendant fails to identify why the SANE nurse's testimony resulted in fundamental error. Defendant fails to show how the SANE nurse's testimony either shocked the conscience of the court or implicates fundamental unfairness. In fact, in light of our disposition of the double jeopardy issue, in which we hold that Defendant may be convicted of only one count of CSCM based on the massage incident, and in light of Defendant's admission to Detective Yoakum of his interest in child pornography and of his giving Child a full-body massage, there is nothing whatsoever shocking about Defendant's conviction, and we cannot say that the SANE nurse's testimony added much to the evidence against Defendant. We therefore hold that the SANE nurse's testimony was not plain or fundamental error.

## C. Detective Yoakum's Testimony

{17} Detective Yoakum was present at both Child's safehouse interview and Child's videotaped deposition. During direct examination, the State asked Detective Yoakum whether there was any difference between the safehouse interview and the videotaped deposition. Detective Yoakum responded that "[t]he only difference is she was able to elaborate further in detail [during her videotaped deposition], as we had found out, and the penetration of the vaginal area." Defendant objected to the testimony and argued to the district court that the tape was the best evidence of Child's statement and not the Detective's testimony. Defendant argues that Detective Yoakum's

testimony regarding Child's safehouse interview improperly bolstered Child's videotaped deposition. The State argues that Defendant's best evidence objection did not preserve the appellate issue of hearsay or reference to penetration. We agree.

{18} "Rule 11–103(A)(1) NMRA ... provides that error may not be predicated upon a ruling admitting evidence in the absence of a ... specific objection." *State v. Abril,* 2003–NMCA–111, ¶ 12, 134 N.M. 326, 76 P.3d 644. "Our case law is clear that in order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Elliott,* 2001–NMCA–108, ¶ 21, 131 N.M. 390, 37 P.3d 107. Raising a best evidence objection does not preserve the issue of improper bolstering for appellate review. *Gutierrez v. Albertsons, Inc.,* 113 N.M. 256, 263, 824 P.2d 1058, 1065 (Ct.App. 1991) (stating that the best evidence rule "is only applicable when a party seeks to prove the contents of a writing").

{19} Ruling on Defendant's objection, the district court told Defendant that he could put the videotape of the safehouse interview into evidence. The State conceded that the safehouse interview could be played, but told the district court that it would not be introducing the safehouse interview into its case. The discourse at the bench reveals that Defendant's objection was ruled upon and granted. Although the district court expressed some concern about the Detective's comparison of the two videotapes, the judge granted Defendant's motion and had the State produce the safehouse interview videotape for Defendant to use at trial. Defendant did not use the videotape. Defendant did not object based on improper bolstering or hearsay; therefore, those arguments on appeal have not been preserved.

## D. Child's Grandmother's Testimony Was Proper

{20} Defendant argues that Child's grandmother's testimony was improper because it characterized several "interactions" between Defendant and Child as "bad acts" only to show that Defendant was a "mean,

bad person." Specifically, Defendant complains the testimony that Defendant was short and angry with Child when she wanted to stay in her newborn brother's hospital room, testimony that Defendant got angry with Child when she did not pack up an outdoor blow-up swimming pool, and testimony that Defendant called Child stupid for not remembering the name of a movie being released, was propensity evidence and should have been prohibited at trial. We disagree.

{21} The State argues that Child's grandmother's testimony was proper to show that Defendant was a "controlling or intimidating" person. The State cites to Rule 11–404(B) NMRA for the proposition that other acts or wrongs can be admissible to show proof of motive, opportunity, preparation, or plan.

{22} The issue before us is whether the district court abused its discretion in allowing the testimony of Child's grandmother and whether admission of the evidence was "obviously erroneous, arbitrary, or unwarranted." *See State v. Harrison*, 2000–NMSC–022, ¶ 18, 129 N.M. 328, 7 P.3d 478. Under Rule 11–404(B), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." In order for the testimony to be admissible under Rule 11–404(B), it must be "relevant to a disputed issue other than the defendant's character, and [the court] must determine that the prejudicial effect of the evidence does not outweigh its probative value." *State v. Beachum*, 96 N.M. 566, 567–68, 632 P.2d 1204, 1205–06 (Ct.App. 1981).

{23} We believe that the relevance of the testimony was marginal. On the other hand, the evidence did have some relevance in showing why Child might succumb to Defendant's advances, and not as mere propensity evidence. So, too, the testimony did not elaborate on any other "bad acts" similar in nature to the charged crimes. Thus, we cannot say that there was undue prejudice in the admission of the testimony. In short, we cannot say that the district court's view of

the relevance of the evidence when balanced against the absence of undue prejudice was obviously erroneous, arbitrary, or unwarranted.

## II. Procedural Issues

### A. Addition of CSPM Charge Two Days Before Trial

{24} Defendant argues that the amendment of the criminal information the day before trial was improper, violated his right to a preliminary hearing, violated his right to a grand jury, and was prejudicial and reversible error. Defendant further argues that he never waived his right to a preliminary hearing on the addition of the count of CSPM. On the day of trial, before voir dire, and in chambers, the State informed the district court of the additional charge. The State informed the court that it had previously discussed the addition of the count with Defendant prior to the videotaped testimony, telling Defendant that if Child was able to articulate the facts to support the charge of CSPM, then the State would add that count to the indictment. Defendant did not dispute what the State said and responded to the charges, including the charge of CSPM, by entering a plea of not guilty. Defendant did not request a preliminary hearing.

{25} Defendant now argues that the district court did not have jurisdiction over Defendant due to the failure to provide a preliminary hearing on the charge of CSPM. We cannot agree. The district court initially acquired jurisdiction upon the filing of the information. *See State v. Vasquez*, 80 N.M. 586, 587, 458 P.2d 838, 839 (Ct.App. 1969). "The jurisdiction so acquired can, however, be lost by failure of the court to remand for a preliminary examination when its absence is timely brought to the attention of the district court." *Id.* (alterations, internal quotation marks, and citation omitted). "Since defendant was charged by an information, he had a constitutional right to a preliminary examination." *State v. Archuleta*, 82 N.M. 378, 383, 482 P.2d 242, 247 (Ct.App. 1970). However, Defendant can waive his right to a preliminary examination by not requesting one.

{26} It is well-settled law in New Mexico that "a plea of guilty or not guilty to an information filed in a district court, in which case no preliminary hearing has been held, ... constitutes a waiver of the constitutional right to a preliminary examination." *Silva v. Cox*, 351 F.2d 61, 64 (10th Cir.1965); *see Sanders v. Cox*, 74 N.M. 524, 525, 395 P.2d 353, 354 (1964) ("[T]he right to have a preliminary hearing may be and is waived upon entry of a plea in district court."); *State v. Jones*, 73 N.M. 459, 462, 389 P.2d 398, 400 (1964) (noting that although it is a criminal defendant's right to have a preliminary hearing, that right can be waived by the entry of a plea). After discussion in the judge's chambers the morning of trial regarding the addition of the charge of CSPM, Defendant told the district court that he understood the charge and proceeded to plead not guilty to all the charges. Through his plea of not guilty, Defendant waived his right to a preliminary hearing on the charge of CSPM.

{27} We now turn to Defendant's contention that the late addition of the CSPM charge was prejudicial and reversible error. When an amendment to a charging document seeks to charge a new or different offense, our cases focus on whether the defendant has received "notice of the charge ... in time to defend against the charge." *State v. Roman*, 1998–NMCA–132, ¶¶ 13–14, 125 N.M. 688, 964 P.2d 852; *see State v. Armijo*, 90 N.M. 614, 618–19, 566 P.2d 1152, 1156–57 (Ct.App.1977). Although both of these cases reversed convictions based on lack of notice, this case is distinguishable from them.

{28} Here, Defendant was given notice by the State prior to Child's videotaped deposition that if Child could articulate facts sufficient to support the charge of CSPM, the charge would be added to the information. Child's testimony that Defendant "licked" her vagina is sufficient to support penetration. *Paiz*, 2006–NMCA–144, ¶ 52, 140 N.M. 815, 149 P.3d 579 ("[L]icking of the vagina unavoidably entail[s] penetration to some extent."). Following Child's testimony as to Defendant's acts, the charge of CSPM was added to the criminal information, as promised by the State. On the morning of trial, Defendant did not object to the amendment of the criminal information. Defendant responded to the addition of the charge by pleading not guilty to all of the charges, including CSPM.

{29} We review whether there was prejudice to Defendant through the addition of the CSPM charge. Defendant argues that he was prejudiced because he "did not question [Child] about penetration during her videotaped trial testimony." Defense counsel informed the district court that he did not ask about penetration because, at the time, it was not a charged offense. Prior to the videotaped deposition, Defendant was notified that Child had articulated to her therapist that Defendant had licked her vagina. Right before the videotaped deposition, Defendant was informed that the information would be sought to be amended if Child's testimony established CSPM. When the videotaped deposition was taken, during the State's direct examination, Child testified that Defendant licked her vagina. Defendant had notice that the issue of penetration was in play. We will not second-guess the tactics of trial counsel as to why he did not take his opportunity to cross-examine Child about that incident.

{30} When a defendant has an opportunity to cross-examine a witness, yet chooses not to do so, we cannot say that the defendant is prejudiced. *See State v. Casaus*, 1996–NMCA–031, ¶ 33, 121 N.M. 481, 913 P.2d 669. This is the case here. Defendant knew in advance that Child might testify that Defendant licked her vagina, yet he chose not to cross-examine her regarding that incident, even after she articulated the incident in her testimony, during the direct examination. We cannot say that Defendant was prejudiced by the addition of the CSPM charge.

{31} We also reject Defendant's argument that the addition of the CSPM charge violated Defendant's right to a grand jury. This argument has no merit. "Under N.M. Const. Art. II, § 14, a defendant may be charged either by grand jury action or by a criminal information." *State v. Mosley*, 79 N.M. 514, 515, 445 P.2d 391, 392 (Ct.App. 1968); *see Baird v. State*, 90 N.M. 667, 669–70, 568 P.2d 193, 195–96 (1977) (noting that defendant waived objections to grand jury proceedings based on the entry of a plea);

*Territory v. Barrett,* 8 N.M. 70, 74, 42 P. 66, 67 (1895) (noting that defendant waived objection to qualification of a juror by going to trial on the merits). The additional charge of CSPM was added to the criminal information charging Defendant, conforming to New Mexico law. Grand jury proceedings were not necessary in this case, and regardless, Defendant waived his right to a grand jury by entering a plea of not guilty and proceeding to a trial on the merits.

{32} We hold that Defendant waived his right to a preliminary hearing based on his entry of a plea, Defendant was not prejudiced by the addition of the CSPM charge, and Defendant was not denied his right to a grand jury because he was charged by criminal information.

## B. The District Court Did Not Commit Reversible Error When It Did Not Give Jury Instructions on a Lesser–Included Charge

{33} Defendant argues that the district court erred when it refused to give an instruction on CSCM, as a lesser-included charge of CSPM. Defendant's argument can be summarized as follows: the jury could have believed that Defendant's tongue did not penetrate Child's vagina, rather Defendant licked the outside of her vagina and because there is an ambiguity, the jury should not be faced with an all-or-nothing approach to the charge. We disagree.

{34} "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar,* 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. In order to receive a jury instruction on a lesser-included offense, "there must be evidence that the lesser offense is the highest degree of crime committed." *Id.* ¶ 50, 123 N.M. 778, 945 P.2d 996. "Where there is no ambiguity in a victim's testimony that could lead a rational juror to acquit a defendant of [criminal sexual penetration] but convict of CSCM, the defendant is not entitled to an instruction on the lesser-included offense." *Paiz,* 2006–NMCA–144, ¶ 50, 140 N.M. 815, 149 P.3d 579.

{35} This case is virtually indistinguishable from *Paiz* in this regard. In *Paiz,* the victim

testified that the defendant "repeatedly awoke her at night 'licking' her 'down there.'" *Id.* ¶ 52, 140 N.M. 815, 149 P.3d 579. This Court held that "[a]s a matter of physiology, the described contact with the vagina went beyond the edge ... of the female sex organ, and as such, the licking of the vagina unavoidably entailed penetration to some extent." *Id.* (internal quotation marks and citations omitted). In this case, Child's testimony indicates that Defendant licked her vagina. This testimony, alone, absent evidence that the licking never penetrated Child's vagina, stands to support the charge of CSPM by the very elements of the crime.

{36} The jury was instructed that to find Defendant guilty of CSPM, they had to find that "[D]efendant caused [Child] to engage in cunnilingus or caused the insertion, to any extent, of a tongue into the vulva or vagina of [Child]." Furthermore, criminal sexual penetration is defined as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission." Section 30–9–11(A). Testimony that Defendant performed cunnilingus on Child was enough to support the charge of CSPM. Child's testimony did not need to be supported in any way by any other evidence. *See State v. Hunter,* 101 N.M. 5, 6, 677 P.2d 618, 619 (1984) ("[I]n a prosecution for criminal sexual penetration, the testimony of the victim need not be corroborated and the lack of corroboration has no bearing on the weight to be given the testimony."). Because the rule on lesser-included offenses requires that in order to receive an instruction on a lesser offense, that lesser offense must be the highest degree of crime committed, we cannot hold that it was error for the district court to refuse to instruct the jury on the lesser offense of CSCM.

## C. The District Court Did Not Deprive Defendant of His Right to Present a Defense

{37} At trial, Defendant sought to introduce his mother's testimony that Child

had told her that Defendant did not improperly touch her or lick her vagina. The district court would not allow Defendant's mother to testify about statements made to her from Child. The district court allowed Defendant to ask his mother whether she had ever heard of the allegations concerning Defendant. The judge would not allow Defendant's mother to testify as to what Child said to her. Defendant also sought to have his father and Child's mother testify that Child had told them that there had been no sexual contact between Child and Defendant. Defendant chose not to call his father based on the district court's ruling that his mother could not testify that Child told her that Defendant did not inappropriately touch her or lick her vagina. Defendant's assertion that he was not allowed to call Child's mother is unavailing; Child's mother was the State's witness and Defendant does not explain why he did not pursue the statement when he was allowed to cross-examine her.

{38} Defendant now argues that by not allowing these witnesses to testify, the district court violated Defendant's right to present a defense. Defendant contends that Rule 11–806 NMRA decides this issue. Defendant argues that under Rule 11–806, the district court must admit impeachment evidence, and that "[n]o more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant." *State v. Orona*, 92 N.M. 450, 452, 589 P.2d 1041, 1043 (1979). Defendant argues the district court should have allowed Defendant's parents to testify to rebut the hearsay statements proffered by Detective Yoakum regarding the difference between Child's safehouse interview and the videotaped deposition. We are not persuaded.

{39} Defendant argues that without the testimony of his parents and Child's mother, "[t]here was no other testimony to rebut the charges except for [Defendant's] own testimony." We disagree. We reiterate, Child's mother did testify that Child told her "repeatedly that he didn't [penetrate her]." Defendant asked that his father be dismissed as a witness, without calling him to the stand. Therefore, we decline to consider Defen-

dant's father's purported testimony in our analysis. With regard to Defendant's mother's testimony, Defendant had ample opportunity to cross-examine Child during her videotaped testimony, yet chose not to do so. Using his mother's testimony to "impeach" Child's testimony was inappropriate, considering Child never testified as to what she said, if anything, to any of Defendant's proffered witnesses. Defendant argues that the use of the testimony was "critical to his defense" and that the evidence that would be procured went to "[Child's] proclivity for truthfulness and was relevant to impeach her credibility." Defendant had an opportunity to develop this theory on cross-examination with Child, which he chose not to do. We hold that Defendant was not deprived of his right to present a defense.

{40} Defendant's alternative argument concerns impeachment of Detective Yoakum's statement that Child's statements during the safehouse interview did not differ substantially from her testimony at the videotaped deposition. Defendant's argument is nugatory. Rule 11–806 addresses the right of a defendant to attack the credibility of a declarant's hearsay statement. This Court has noted that "[a] hearsay declarant can be impeached just as any other witness." *State v. Swavola*, 114 N.M. 472, 477, 840 P.2d 1238, 1243 (Ct.App.1992). Defendant argues that Detective Yoakum was testifying as to Child's statements. However, Child's statements at her deposition were her testimony, and we reiterate that Defendant was afforded an opportunity to cross-examine Child about her allegation that Defendant "licked" her vagina, but did not do so. *See* Rule 11–613(B) NMRA (requiring the witness to be given the opportunity to explain or deny). Defendant did not raise the issue of Child's hearsay, and then did not mention Rule 11–806. Defendant did not offer the evidence at trial on the same basis that he argues on appeal. The district court did not err.

**III. Defendant's Convictions Violate the Double Jeopardy Rule**

{41} Defendant argues that the full-body massage, from which three counts of

CSCM are derived, only counts as one event for purposes of the double jeopardy rule. Defendant further argues that the three convictions violate his right to be free from double jeopardy because the convictions subjected him to multiple punishments for one act. The State concedes Defendant's arguments. Although we are not bound by the State's concession, *State v. Foster*, 1999–NMSC–007, ¶ 25, 126 N.M. 646, 974 P.2d 140, we agree and reverse two of Defendant's convictions for CSCM.

{42} The New Mexico Constitution contains a prohibition that no person "be twice put in jeopardy for the same offense." N.M. Const. art. II, § 15. A question of double jeopardy can be raised at any time. NMSA 1978, § 30–1–10 (1963) ("The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment."). The issue of double jeopardy involves a constitutional question, which we review de novo. *State v. Ford*, 2007–NMCA–052, ¶ 7, 141 N.M. 512, 157 P.3d 77.

{43} We surmise from Defendant's brief that he is arguing the "unit of prosecution" prohibition against double jeopardy. The "unit of prosecution" category of double jeopardy prohibits charging a defendant with "multiple violations of a single statute based on a single course of conduct." *State v. DeGraff*, 2006–NMSC–011, ¶ 25, 139 N.M. 211, 131 P.3d 61. The relevant inquiry is whether "the legislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). In this type of case, our first inquiry is into the legislative intent. *State v. Cook*, 2006–NMCA–110, ¶ 9, 140 N.M. 356, 142 P.3d 944. We begin by looking to the statutory language for guidance, and if it is clear, "we follow the language, and the unit-of-prosecution inquiry is complete." *State v. Bernal*, 2006–NMSC–050, ¶ 14, 140 N.M. 644, 146 P.3d 289. We next determine whether a "defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* (citation omitted).

{44} Section 30–9–13(A) defines criminal sexual contact of a minor as the "unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts." That language is ambiguous in our determination of whether the legislature intended to create a separate offense for each touch or application of force. *See Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991). Our case law indicates that we have continuously treated this statute as ambiguous in criminal sexual contact cases. *See State v. Segura*, 2002–NMCA–044, ¶¶ 7–8, 132 N.M. 114, 45 P.3d 54; *State v. Laguna*, 1999–NMCA–152, ¶¶ 37–38, 128 N.M. 345, 992 P.2d 896. Having determined that this statute is ambiguous, we move on to whether the Legislature intended multiple punishments under this statute.

{45} Defendant relies on *Herron* for the factors in determining whether he committed one continuous act or separate, distinct acts. Defendant argues that "[t]he touching of [Child's] body during one massage, over a short period of time, with no intervening event, with no movement to a different place or area, and no repositioning of [Child], with one intent to massage her body, is simply one continuous touching of [Child's] private parts."

{46} We agree with Defendant's assertion, and the State's concession, that Defendant's conduct falls under one continuous course of conduct, and cannot be counted as separate offenses. "[W]e presume that the statute was not intended to impose multiple punishments for acts that are not sufficiently distinct." *Cook*, 2006–NMCA–110, ¶ 10, 140 N.M. 356, 142 P.3d 944 (internal quotation marks and citation omitted). We have to decide "whether Defendant's acts bore sufficient indicia of distinctness." *Id.* ¶ 13, 140 N.M. 356, 142 P.3d 944 (internal quotation marks and citation omitted). "[W]e consider the timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims." *Id.* (internal quotation marks and citation omitted). The incident in which De-

fendant massaged Child's nude body, touching her breasts, buttocks, and vagina was one continuous course of conduct, not capable of being split into three charges merely because Defendant touched three different body parts. There was only one victim and Defendant apparently had only one motive. There was no lapse in time between the times Defendant touched Child's different body parts and no intervening event. We therefore conclude that only one act of CSCM occurred. *Cf. State v. Salazar*, 2006–NMCA–066, ¶ 30, 139 N.M. 603, 136 P.3d 1013.

{47} We conclude that Defendant's convictions on three counts of CSCM violate his right to be free from double jeopardy, and we remand to the district court for dismissal of two of the convictions for CSCM.

## IV. General Errors

### A. There Was Sufficient Evidence to Support Defendant's Child Pornography Convictions

{48} Defendant argues that there was insufficient evidence to support his convictions of sexual exploitation of children by manufacturing child pornography. Defendant argues that the State only had thirteen photographs in its possession at trial to prove twenty counts of manufacturing child pornography. Child's mother testified that she saw between fifteen and twenty-four sexual photographs on Defendant's computer. She testified that she remembered that one photograph was dated January 2003. She was able to testify as to specifics of several of the photographs, for example, that it was Child in the photograph, where those photographs were taken, some of the items in the photographs, and the sexual nature of the photographs. The photographs were not available at trial because Defendant destroyed the computer.

{49} Reviewing the sufficiency of the evidence is a two-step process. First, we view the evidence in the light most favorable to the verdict. *State v. Ortiz–Burciaga*, 1999–NMCA–146, ¶ 22, 128 N.M. 382, 993 P.2d 96. Second, we make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). We will not re-weigh the evidence or substitute our judgment for the judgment of the fact-finder as long as the verdict is supported by sufficient evidence. *State v. Coffin*, 1999–NMSC–038, ¶ 73, 128 N.M. 192, 991 P.2d 477.

{50} Defendant was convicted of fourteen counts of manufacturing child pornography, one more count than was proven using photographs. Child's mother testified as to the rest of the photographs on the computer. The jury was instructed on twenty counts of manufacturing child pornography and acquitted Defendant of six of those counts. Child's mother's testimony establishes that she and Child moved in with Defendant in October of 2001. Child's mother found the photographs that she described in her testimony in December of 2003. This establishes that the photographs of Child were taken between October of 2001 and December of 2003. The State was required to prove, beyond a reasonable doubt, that

1. . . . Defendant manufactured an obscene visual or print medium depicting any prohibited sexual act or simulating such an act;

2. At least one of the participants in the act was a child under the age of eighteen;

3. This happened in New Mexico on, about, or between January 01, 2000, and December 8, 2003.

{51} Child's mother's testimony established that Defendant's computer had photographs of a sexual nature of Child between October 2001 and when she discovered them in December of 2003. Further, Child's mother's testimony establishes at least one photograph had a date of January 2003. We cannot hold that there was insufficient evidence for the jury to find one additional count of manufacturing child pornography, above the physical photographs that the State presented, given Child's mother's testimony.

## B. Cumulative Error

{52} "We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial." *Ortiz–Burciaga,* 1999–NMCA–146, ¶ 9, 128 N.M. 382, 993 P.2d 96 (internal quotation marks and citation omitted). We only found error in two of Defendant's convictions for CSCM as a violation of double jeopardy. We cannot hold that those two errors alone support reversal for cumulative error.

## CONCLUSION

{53} We hold that two of Defendant's convictions for CSCM were in violation of Defendant's right to be free from double jeopardy, and reverse and remand to the district court for dismissal of two of the convictions for CSCM. We affirm on all of Defendant's remaining convictions.

{54} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, and IRA ROBINSON, Judges.