This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36134**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOHN JARAMILLO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant John Jaramillo was convicted of three counts of criminal sexual contact of a minor in the second degree (CSCM II), contrary to NMSA 1978, Section 30-9-13(B) (2003), one count of criminal sexual contact of a minor in the third degree (CSCM III), contrary to Section 30-9-13(C), and two counts of intimidation of a witness, contrary to NMSA 1978, Section 30-24-3(A)(3) (1997). On appeal, Defendant challenges the sufficiency of the evidence for all counts and argues that his convictions for two counts of CSCM II and two counts of intimidation of a witness violated his right

to be free from double jeopardy. We hold that insufficient evidence exists to sustain Defendant's conviction for one count of CSCM II (Count 2) and that Defendant's convictions for two counts of CSCM II (Counts 1 and 3) and two counts of intimidation of a witness (Counts 5 and 6) violate double jeopardy. We affirm Defendant's remaining convictions.

## BACKGROUND

**{2}** Defendant was accused of inappropriately touching his minor niece (B.V.). B.V. grew up in a home where her mother used drugs daily and frequently was absent. During her mother's absences, B.V. was left in the care of her step-father or, occasionally, Defendant. Defendant, too, was a regular drug user and often at the house. At the time of Defendant's trial, B.V. was twelve years old. B.V. testified that Defendant touched her inappropriately on three occasions when she was five or six years old. B.V. also testified that Defendant twice told her that if she told anyone that he touched her, he would kill her. B.V. lastly recounted an occasion when Defendant asked her to pull her pants down. Defendant testified in his own defense and denied that any of this occurred. The jury convicted Defendant of all counts submitted to it, and Defendant appealed. We reserve further discussion of the pertinent facts for our analysis.

## DISCUSSION

### I.  Sufficiency of the Evidence

**{3}** Defendant challenges the sufficiency of the evidence for his convictions. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. The test for sufficiency of evidence is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Montoya*, 2015-NMSC-010, ¶ 53, 345 P.3d 1056 (alteration, internal quotation marks, and citations omitted). We test the sufficiency of the evidence against the jury instructions given. *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 ("[J]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)).

### A.  Count 4 (CSCM III)

**{4}** Defendant challenges the sufficiency of the evidence to support his conviction for Count 4 (CSCM III). In order to convict Defendant of Count 4, the jury had to find, in relevant part, beyond a reasonable doubt that "[D]efendant caused [B.V.] to touch the penis of [D]efendant," and "[D]efendant's act was unlawful." UJI 14-925 NMRA; *see also*

§ 30-9-13(A), (C). "Unlawful" in turn was defined as an act that was "done with the intent to arouse or gratify sexual desire or to intrude upon the bodily integrity or personal safety of [B.V.]" UJI 14-132 NMRA. The jury also was instructed that it must find Defendant acted intentionally. UJI 14-141 NMRA. The State's proof for this charge consisted of B.V.'s testimony, in which she recounted an occasion when Defendant invited her to sit on his lap on the living room couch and upon doing so she could "feel his private part move around." B.V. stated they were both fully clothed, but Defendant caused his penis to move on her legs. B.V. did not know how long this went on. B.V. testified that there were other times she would sit on Defendant's lap, but she only felt his penis this one time. B.V. also testified that she never had to touch Defendant or do anything to his body.

**{5}**     In challenging his conviction for this count, Defendant first argues that he did not "cause" B.V. to touch his penis within the meaning of the statute since B.V. did not testify that Defendant placed or maneuvered her hand or body on his penis but, instead, testified that Defendant simply invited B.V. onto her lap. Defendant cites *State v. Felix*, No. 34,878, memo. op. (N.M. Ct. App. Apr. 4, 2017) (non-precedential), an unpublished case, to argue his actions were insufficient. Aside from lacking precedential value, *Felix* is otherwise inapposite since the version of CSCM at issue in that case required the use of physical force or violence, which was not required for Count 4. *Compare Felix*, No. 34,878, ¶¶ 5, 8 (requiring use of "physical force or physical violence"), *and* UJI 14-921 (same), *with* UJI 14-925 (setting out no such requirement). Moreover, Defendant has offered no citation for the constrained definition of causation he proposes, and we thus assume no such authority exists. *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). From B.V.'s testimony that Defendant invited her to his lap and that once she was there he moved his penis around on her legs, the jury reasonably could find that Defendant intentionally caused B.V. to touch his penis.

**{6}**     Defendant also argues the evidence was insufficient to establish that his actions were unlawful—i.e., that they were "done with the intent to arouse or gratify sexual desire." UJI 14-132. "Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." *State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 (internal quotation marks and citation omitted). Under the CSCM statute, "[p]roof of the wrongful manner in which the act was perpetrated, regardless of the actor's specific intent, will be sufficient to establish that the act was performed 'unlawfully,' or 'without justification or excuse,' as an element of the offense." *State v. Osborne*, 1991-NMSC-032, ¶ 30, 111 N.M. 654, 808 P.2d 624. Defendant asserts that "[t]here was no evidence here indicating that [he invited B.V. on his lap] in a manner inconsistent with the lawful, familial care of a child." We disagree.

**{7}**     While B.V. testified to other instances in which she sat on Defendant's lap and did not feel his penis, this occasion was different. Upon being invited onto his lap, B.V. testified she felt Defendant's penis moving around on her legs and it was Defendant who caused this movement. When viewed in isolation, we have concerns about the

sufficiency of this evidence to prove unlawfulness. There could be an innocent explanation for Defendant's actions; but in light of other facts in evidence, the jury was free to draw the opposite inference in this case. *See State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793 ("[A]s a reviewing court, we do not reweigh the evidence or attempt to draw alternative inferences from the evidence."). In this case, B.V. testified to two other occasions in which Defendant touched B.V. in a sexual manner and a third incident in which Defendant asked B.V. to take off her pants. It was permissible for the jury to draw upon these other acts in determining whether Defendant's intent with respect to Count 4 was unlawful. *Cf., e.g.*, *State v. Kerby*, 2007-NMSC-014, ¶ 26, 141 N.M. 413, 156 P.3d 704 (concluding other bad act evidence that the defendant constructed a peephole to peer into the victim's bathroom was permissible to prove the defendant had a sexual intent when he touched the victim's buttocks); *State v. Bailey*, 2015-NMCA-102, ¶¶ 2, 4, 17, 357 P.3d 423 (concluding uncharged evidence of other non-parental touching, occurring between two instances giving rise to the charges, was relevant to whether the defendant touched the child with unlawful intent), *aff'd*, 2017-NMSC-001, 386 P.3d 1007. Under the circumstances of this case, the jury reasonably could infer that Defendant invited B.V. onto his lap and caused B.V. to touch his penis with the requisite intent. We therefore conclude that sufficient evidence supports Count 4 (CSCM III).

## B.    Count 2 (CSCM II)

**{8}**    Defendant also challenges the sufficiency of the evidence to support his conviction for Count 2 (CSCM II). In order to convict Defendant of Count 2, the jury had to find, in relevant part, beyond a reasonable doubt that Defendant "touched or applied force to the unclothed genitals of [B.V.]" UJI 14-925; *see also* § 30-9-13(A), (B). In support of this charge, the State introduced testimony from B.V. that, "I was in my room and he took off most of my clothes and he, like, tied my hands so I wouldn't move and he like went on top of me." B.V. testified that Defendant was naked and she was able to see his body, including his penis. B.V., however, did not elaborate further on the touching. When asked what happened after Defendant removed her clothes and tied her up, she again stated, "He went on top of me." And although B.V. testified that she thought she could feel Defendant's private parts, she did not elaborate where on her body she felt his genitals. B.V. instead said that Defendant did not do anything else, that she could not remember where Defendant's hands were during the interaction, and that he did not make her do anything with her hands.

**{9}**    Defendant argues that "there are no facts from which a reasonable juror could infer that he touched [B.V.'s] genitals during this incident." We agree. While we must, as noted, apply a highly deferential standard to our review of a jury's verdict, it is "the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641; *see* UJI 14-6006 NMRA ("Your verdict should not be based on speculation, guess or conjecture."). "This principle necessarily requires a reviewing court to distinguish between conclusions based on speculation and those based on inferences, a task that is not always

straightforward." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930. "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (alterations, internal quotation marks, and citation omitted). "Where, however, the evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction," such conviction cannot stand. *State v. Vigil*, 1975-NMSC-013, ¶ 12, 87 N.M. 345, 533 P.2d 578 (internal quotation marks and citation omitted).

**{10}**   Applying these principles here, B.V. provided no testimony about what part or parts of her body Defendant touched when he "went on top of [her]." She did not describe what position her body was in, what position Defendant's body was in, how long the touching lasted, or what Defendant did when he went on top of her. Indeed, B.V. testified that, "He didn't do anything. He just went on top of me." She could not remember where Defendant's hands were during the encounter. And although B.V. said that she thought she felt Defendant's genitals on her, she did not identify where on her body this touching occurred.[1] While we have rightly observed that "young children cannot be held to an adult's ability to comprehend and recall dates and other specifics," *State v. Baldonado*, 1998-NMCA-040, ¶ 20, 124 N.M. 745, 955 P.2d 214 (alteration, internal quotation marks, and citation omitted), in this case, there simply is no testimony from which to draw a reasonable inference that Defendant touched B.V.'s unclothed genitals.[2] A contrary conclusion would require a number of speculative leaps and, as such, Defendant's conviction for Count 2 (CSCM II) cannot stand.

## C.   Remaining Counts

**{11}**   Defendant challenges the sufficiency of the evidence to support his remaining convictions on the ground that he presented contrary testimony at trial. This argument is unavailing as "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Defendant providing no other argument, we decline to further review the sufficiency of the evidence supporting Defendant's remaining convictions.

## II.   Double Jeopardy

**{12}**   Defendant challenges his two intimidation convictions (Counts 5 and 6) and two of his CSCM II convictions (Counts 1 and 3) as violative of his right to be free from double jeopardy. The double jeopardy clause of the Fifth Amendment of the United

---

[1]While this conduct may be sufficient to support a conviction for CSCM III on the theory that Defendant caused B.V. to touch his genitals, the jury was not instructed on this alternative theory. *See* UJI 14-925.

[2]Although the jury instructions in this case included only the touching of B.V.'s "unclothed genitals," the State refers in its briefing to both the genital area and the groin as a basis for finding sufficient evidence, citing the statutory definition of intimate parts. *See* § 30-9-13(A) (defining "intimate parts" as "primary genital area, groin, buttocks, anus or breast"). Given the jury was not instructed to consider whether Defendant touched B.V.'s unclothed groin, we question whether the sufficiency of the evidence may appropriately be tested against this portion of the statute. *See Arrendondo*, 2012-NMSC-013, ¶ 18. Regardless, even were we to consider this, we come to the same conclusion—for the reasons already stated, there was insufficient evidence that Defendant touched B.V.'s unclothed intimate parts, whether it be her genitals or groin.

States Constitution "functions in part to protect a criminal defendant against multiple punishments for the same offense." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 (internal quotation marks and citation omitted). Defendant "challenges multiple convictions under the same statute," making this a "unit-of-prosecution" case. *Id.* In such cases, we ask "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. "To determine the Legislature's intent with respect to the unit of prosecution for a criminal offense, we apply a two-step test. First, we review the statutory language for guidance on the unit of prosecution. The plain language of the statute is the primary indicator of legislative intent." *State v. Ramirez*, 2018-NMSC-003, ¶ 47, 409 P.3d 902 (internal quotation marks and citations omitted). "If the unit of prosecution is not clear from the statute at issue, including its wording, history, purpose, and the quantum of punishment that is prescribed," then we move to the second step and "must determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments." *Swick*, 2012-NMSC-018, ¶ 33.

**{13}** To determine whether a defendant's acts are sufficiently distinct, we look to factors adopted by our Supreme Court in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. In particular, we examine the "(1) temporal proximity of the acts; (2) location of the victim during each act; (3) existence of an intervening act; (4) sequencing of the acts; (5) the defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *State v. Garcia*, 2009-NMCA-107, ¶ 10, 147 N.M. 150, 217 P.3d 1048 (citing *Herron*, 1991-NMSC-012, ¶ 15). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Ramirez*, 2018-NMSC-003, ¶ 47 (internal quotation marks and citation omitted). "The issue of intended unit of prosecution is a question of law subject to de novo review." *State v. Olsson*, 2014-NMSC-012, ¶ 14, 324 P.3d 1230.

## A.    Counts 5 and 6 (Intimidation of a Witness)

**{14}** Defendant challenges his two convictions for intimidating or threatening a witness in Counts 5 and 6 as violating his right to be free from double jeopardy. As for the first step, Defendant does not analyze the relevant statutory language but instead asserts that Section 30-24-3(A)(3) "does not clearly define the unit of prosecution." The State fails entirely to respond to this portion of the unit-of-prosecution analysis. Neither party thus argues that the relevant criminal statute is dispositive of the unit of prosecution nor presents developed arguments on the matter. We accordingly proceed to the second step of the unit-of-prosecution analysis. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts will not address arguments where parties failed to develop them "with any principled analysis"); *State v. Demongey*, 2008-NMCA-066, ¶ 10, 144 N.M. 333, 187 P.3d 679 (proceeding to second step of the unit-of-prosecution analysis where "neither party argues that the unit of prosecution is clearly defined in the relevant criminal statutes").

**{15}** In this case, the indicia of distinctness do not justify convicting Defendant of multiple acts of intimidation. The only evidence presented to support these charges consisted of B.V.'s testimony that Defendant "told me that if I told anyone that he touched me, he would kill me." When asked how many times Defendant said that, B.V. answered, "Twice, I think." B.V., however, could not remember when Defendant made the statements or even if they coincided with the incidents of sexual abuse. Here, even when viewing the facts favorably in support of the verdict, there simply is no indication whether Defendant's acts happened on the same or separate occasions or were otherwise separated by any indicia of distinctness to justify multiple punishments. Applying the rule of lenity, as we must, one of Defendant's convictions for intimidating a witness (Count 5 or 6) must be vacated.

## B.   Counts 1 and 3 (CSCM II)

**{16}** Defendant was convicted of CSCM II in Count 1 for touching B.V.'s unclothed genitals and in Count 3 for touching B.V.'s unclothed breasts. Defendant challenges these convictions as violating his right to be free from double jeopardy. Our case law has consistently treated the CSCM statute, Section 30-9-13, "as ambiguous in criminal sexual contact cases," so we proceed to address whether sufficient indicia of distinctness separate the convictions. *State v. Ervin*, 2008-NMCA-016, ¶ 44, 143 N.M. 493, 177 P.3d 1067.

**{17}** Counts 1 and 3 are predicated on an incident that occurred in B.V.'s brother's bedroom. B.V. testified that Defendant put his hand in her pants and "he started, like, rubbing" under her underwear. B.V. testified that Defendant also touched her breasts under her clothes during the same encounter. B.V. did not know how long the encounter lasted and provided no testimony that the touching of her genitals was in any way separated from the touching of her breasts. The State concedes on appeal that there are not sufficient indicia of distinctness to find separate offenses and that one of the CSCM II convictions should be vacated. While we are not bound by the State's concession, *see State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775, we agree that Defendant's acts lack sufficient indicia of distinctness to justify multiple punishments, *see Ervin*, 2008-NMCA-016, ¶ 46 (holding that "[t]he incident in which [the d]efendant massaged [the c]hild's nude body, touching her breasts, buttocks, and vagina was one continuous course of conduct, not capable of being split into three charges merely because [the d]efendant touched three different body parts"). Again, applying the rule of lenity, as we must, one of Defendant's convictions for CSCM II (Count 1 or 3) must be vacated.

## CONCLUSION

**{18}** We reverse Defendant's conviction for Count 2 (CSCM II), and we remand with further instructions to vacate one count of CSCM II (Count 1 or 3) and one count of intimidation of a witness (Count 5 or 6) and to resentence Defendant accordingly. We affirm Defendant's remaining convictions.

**{19}** IT IS SO ORDERED.

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**