This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **No. 31,997**

**TOBY GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

**{1}** A jury found Defendant Toby Gonzales guilty of kidnapping, conspiracy to commit kidnapping, and tampering with evidence based on his involvement in the kidnapping and murder of Steven Duran (the Victim). *See* NMSA 1978, § 30-4-1(A)(4), (B) (2003) (defining kidnapping, a first degree felony); NMSA 1978, § 30-28-2(A), B(1) (1979) (defining conspiracy and providing that, when the crime conspired to be committed is a first degree felony, the conspiracy constitutes a second degree felony); NMSA 1978, § 30-22-5(A), (B)(1) (2003) (defining tampering with evidence and providing that, when it is related to evidence of a first degree felony, tampering with evidence constitutes a third degree felony). The district court entered its judgment against Defendant in accordance with the jury verdicts and sentenced Defendant to thirty-three years imprisonment, followed by two years of parole. Defendant appeals from the court's judgment.

**{2}** On appeal, Defendant argues that the district court made erroneous evidentiary rulings, he challenges the sufficiency of the evidence, and he argues that the court erred in refusing to allow his counsel to withdraw. We hold that Defendant's claims of error provide no basis for reversal. We affirm.

**BACKGROUND**

**{3}** Defendant and Rudy Salazar were arrested on February 23, 2010, in connection with a report that they were the last people to have been seen with the Victim who had

been missing since February 18, 2010. After he was arrested, Salazar directed New Mexico State Police agents to the Victim's truck that was located in a remote area, east of U.S. 285 in or near Chamita, New Mexico. The agents found a large amount of blood in the bed of the truck, and there was evidence that someone had tried, unsuccessfully, to light the truck on fire, using gasoline, brush, and tree branches.

{4} After he was arrested, Defendant was interviewed by two New Mexico State Police Investigations Bureau agents, both of whom testified at Defendant's trial. Joey Gallegos, an agent with the New Mexico State Police Investigations Bureau, interviewed Defendant three times. Agent Gallegos believed Defendant was lying in the first interview conducted on February 23, 2010, because the information that Defendant gave did not match information that Agent Gallegos received from Agent Baca as a result of his interview with Salazar. However, Agent Gallegos testified that as Defendant was walking away from the second interview also on February 23, Defendant "mumbled something to the effect that, 'You guys won't find the truck.' " The third interview, later the same day, with Defendant occurred after the agents had found the Victim's truck; and in light of that information, Defendant told Agent Gallegos what had occurred on the night of February 18, 2010.

{5} According to Agent Gallegos, Defendant told him the following. On the evening of February 18, 2010, the Victim and Rudy Salazar were at Defendant's

house with Defendant. Defendant borrowed the Victim's truck so that he could drive down the road to meet a girl. As Defendant was driving back to his home, he noticed that the police were there, and when the police began chasing him, he led them on a high-speed chase and "drove up to the hills," thereby successfully evading the police. Defendant phoned Salazar and the Victim from the hills and requested that they bring him some gasoline.

{6} When Salazar and the Victim showed up with the gasoline, the three burned a tree because it was cold outside, and began partying, using cocaine and drinking alcohol. The Victim began "tripping out a little bit," so Defendant tried to calm him down. When the Victim was sitting down with his head between his legs and his hands behind his head, Salazar became agitated with the Victim. Salazar approached the Victim from behind and put a t-shirt round his neck and said something like, "I can kill you. I can choke you at any time." Salazar abandoned the t-shirt for some baling twine and choked the Victim for a second time. Salazar approached the Victim a third time, this time physically beating and choking him. After the choking and beating incident, the Victim, who according to Defendant was "easily manipulated," complied with an order by Salazar and Defendant to get into the back of the truck. According to Defendant, Salazar tied the Victim up with baling twine, and then, with the Victim tied up in the back, Salazar and Defendant began driving off. As they started to drive,

4

Salazar noticed that the Victim had managed to untie himself; they stopped the truck, Salazar got out, choked the Victim to death, and they continued driving into the hills. Defendant and Salazar took the Victim's body out of the truck and burned it. Then they drove the truck away from the Victim's body until it got stuck.

{7}    Agents found the Victim's body on February 24, 2010. It was in an arroyo approximately half a mile south from the location of the Victim's truck. An autopsy confirmed that the Victim had blunt force injury to his head, consisting of multiple lacerations, there was evidence of ligature strangulation, and he had been extensively burned. Because the Victim's body had been so significantly burned, it was impossible for the forensic pathologist who supervised and participated in the autopsy to determine whether the blunt force injuries from the beating, the strangulation, or the burning was ultimately responsible for the Victim's death.

{8}    Agent Abraham Baca testified, among other things, that he interviewed Defendant on March 1, 2010. According to Agent Baca, at the outset of their interview, Defendant requested an attorney and stated that he would give an honest interview once he had an attorney present. Once Defendant requested an attorney, Agent Baca concluded the interview, turned off his recorder, and was getting ready to leave when Defendant "asked [Agent Baca] if [he] had found both scene[s]." Agent Baca testified that Defendant "referred to two scenes[,]" one where the truck was

5

found and the other "where they burned the tree[.]" Defendant also reportedly told Agent Baca that the Victim's shoes and a blue knife that Defendant and Salazar used to cut the string, with which Salazar tied the Victim, were located at the scene of the burned tree; and that Salazar "did the majority of it[,]" including having "hit [the Victim] with a pipe[.]" Defendant reportedly asked Agent Baca if the police had found the pipe and then said that "the minute he contacted his attorney[,]" he would tell Agent Baca everything.

{9} Salazar pleaded guilty to second degree murder and first degree kidnapping for his involvement in the Victim's death; and Salazar's plea was admitted into evidence at Defendant's trial. It was the district court's understanding that, among other things, the terms of Salazar's plea required him to testify truthfully at Defendant's trial. Salazar did not testify. Defendant was tried by a jury on charges of second degree murder, or in the alternative, accessory to second degree murder; kidnapping, or in the alternative, accessory to kidnapping; tampering with evidence, and conspiracy to commit kidnapping. The jury found Defendant guilty of kidnapping, tampering with evidence, and conspiracy, but the jury could not reach a unanimous verdict on the murder charges. Additional background regarding the trial will be provided as necessary throughout the discussion section of this Opinion.

6

{10} On appeal, Defendant argues that the district court erred in limiting Defendant's cross-examination of law enforcement officers regarding statements made by Salazar and that the court's ruling in that regard affected his constitutional right to confront his accuser. He also argues that the district court erred in admitting Agent Baca's testimony and that the court erred in denying Defendant's motion for a mistrial on the basis of that agent's allegedly perjured testimony. He also challenges the sufficiency of the evidence and argues that the court erred in refusing to allow his counsel to withdraw following allegations of ineffective assistance of counsel. We are not persuaded by Defendant's assertions of error; accordingly, we affirm his convictions.

**DISCUSSION**

**I.      Standard of Review**

{11} Defendant's claims of error require us to consider evidentiary and constitutional issues, the propriety of the court's denial of a mistrial, and the sufficiency of the evidence supporting Defendant's convictions. We review the court's decision to admit or exclude evidence for an abuse of discretion. *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. The district court's denial of a motion for mistrial is also reviewed for an abuse of discretion. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by State*

7

*v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say [that] the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Flores*, 2010-NMSC-002, ¶ 25 (internal quotation marks and citation omitted). We review issues involving a defendant's constitutional rights de novo. *See State v. Lopez*, 2011-NMSC-035, ¶ 10, 150 N.M. 179, 258 P.3d 458. We review the sufficiency of the evidence by considering whether, when viewed in the light most favorable to the verdict, substantial direct or circumstantial evidence exists to support a conclusion that the defendant was guilty beyond a reasonable doubt. *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944.

## II.   Defendant's Argument Regarding Salazar's Statements

{12}   On the first day of trial, Defendant filed a motion to exclude Salazar's statements to police during the investigation into the Victim's murder, some of which implicated Defendant in the murder. As a basis for the motion, Defendant stated that Salazar would refuse to testify at trial, and he had not "made himself available to give a witness statement prior to trial[.]" Accordingly, Defendant had not been afforded an opportunity to confront Salazar in regard to any inculpatory statements made against him, and the admission of those statements would violate Defendant's

8

constitutional right to confront witnesses against him. *See State v. Walters*, 2007-NMSC-050, ¶¶ 23-24, 142 N.M. 644, 168 P.3d 1068 (recognizing that the admission of incriminating statements of non-testifying co-defendants at the defendant's trial was a per se violation of the defendant's right to confront the witnesses against him).

{13}     When the State called Salazar to testify, he refused to do so notwithstanding the district court's finding that he did not have a Fifth Amendment right to remain silent and notwithstanding the court's order to testify. In light of Salazar's clear intention to not testify, Defendant's counsel asked the court to consider Defendant's motion to exclude Salazar's statements that implicated Defendant in the Victim's murder. The following exchange took place between Defendant's counsel, the court, and the prosecutor outside the presence of the jury.

> [Defendant's counsel]: I alluded to exclude any reference made by Mr. Salazar. You have the motion.

> The [c]ourt: I can't imagine how they would come in.

> [Defendant's counsel]: Judge, it's a formality that I think I need to make[.]

> The [c]ourt: The door could be open.

> [Defendant's counsel]: Barring opening the door, I don't believe any police agent or law enforcement officer can testify [to] anything that Rudy Salazar said that inculpates [Defendant]. That's not to say the statements by Mr. Salazar can't come in, but they can't come in if they include any inculpatory evidence against [Defendant].

9

The [c]ourt: That's correct. That's the status of the law.

[Prosecutor]: Your Honor, I'd like to get a better ruling because what happened is that [Defendant was] in one room being interrogated. He was giving voluntary statements to Agent Gallegos. Mr. Salazar was in another room giving voluntary statements to Agent Baca. They're going back and forth. Basically the reference would be, "[Defendant], Rudy said this." And in response to that, [Defendant] made statements. Or, "We've been talking to Rudy and we know more." It's things like that. Your Honor, I think as a matter of completeness all of the statements and references to Rudy [sic – Defendant] should come in.

The [c]ourt: I think confrontation trumps completeness. I don't see how you can get that in.

[Prosecutor]: The other way it could come in is that sometimes Mr. Salazar would say what he did and then he would go into statements about "we."

The [c]ourt: Again, . . . if he says what he did, that's admissible. But I don't think—

[Prosecutor]: But in the same sentence he's saying "we."

The [c]ourt: I don't think the we part comes in unless you can show me some case law that says it can come in. Right now—

[Prosecutor]: I just want to make a clear record that Your Honor is basically saying *Crawford* trumps the rule of completeness.

The [c]ourt: Correct.

[Defendant's counsel]: And [*Melendez-*]*Diaz.*

The [c]ourt: Yeah. . . . . Now, I can envision ways the door can be opened, but we're not there yet. If the door is open I'll let you know that the door is open. And [Defendant's counsel] would have to be careful with that.

10

**{14}** While Defendant agrees that the foregoing ruling was "clearly correct," he argues that the court's expressed intention to suppress Salazar's statements that incriminated Defendant was rendered "illusory" by a later ruling. The later ruling upon which Defendant's argument is premised stemmed from another exchange between the court, the prosecutor, and Defendant's counsel, also outside of the jury's presence. In that exchange, Defendant's counsel stated that he believed that Agents Gallegos and Baca could testify that Agent Gallegos overheard Salazar tell Agent Baca that, " 'I killed Steven Duran. I hit him with a pipe, and I kicked him in the stomach.' " In response to Defendant's counsel's assertion that the foregoing comment was admissible "as a statement against penal interest[,]" the court warned Defendant's counsel to be careful because if the court admitted that comment, "then why wouldn't a contradictory statement come in where he says something different[,]" for example, "Salazar['s statement] that he had nothing to do with it." The court also reiterated that it was "inclined not to allow any of . . . Salazar's statements in." Defendant's counsel responded by stating that he would rely on Salazar's plea, which was already before the jury, stating, "I don't believe it opens any doors if we stay away from [Salazar's] statements, but to rely on a plea, that's been filed with the [c]ourt."

{15}     In Defendant's view, he should have been permitted to elicit testimony either from Agent Gallegos or Agent Baca that Salazar had confessed to striking the Victim without opening the door to the admission of Salazar's statements to the contrary. Defendant argues that "the [d]istrict [c]ourt's mistaken ruling that Defendant's reliance on Salazar's confession would open the door to the admission of [Salazar's] self-exculpatory statements" had the practical effect of "forcing [Defendant] to abandon a critical portion of his defense to ensure his right to confront his accuser."

{16}     Defendant's argument is based on a strained construction of what occurred at trial and of its effect on his constitutional rights to present a defense and to confront his accusers. Far from posing a potential threat to his confrontation right, the court appears to have been solicitous of avoiding any such violation, first by granting Defendant's motion to exclude any of Salazar's statements that implicated Defendant, and later, by emphasizing that it was not inclined to allow any of Salazar's statements into evidence. Thus, Defendant's assertion that the court's expressed intention to suppress Salazar's incriminating statements regarding Defendant was "illusory" is contradicted by the record. There was nothing illusory about any ruling. The court fairly handled Defendant's one-sided attempt to parse the agents' testimony in such a way as to admit Salazar's confession but exclude any examination by the prosecution about the confession.

12

{17} Further, Defendant's argument that his right to present a defense was pitted against his right to confront his accuser provides no basis for reversal. Salazar's guilty plea to the Victim's murder was placed into evidence, thus providing Defendant with demonstrable proof of Salazar's admission that he had killed the Victim. Indeed, Defendant's counsel made a tactical decision to rely on the plea rather than attempting to elicit the details of or open the door to the State's questions about Salazar's confession to the agents in order to present the defense that Salazar, not Defendant, murdered the Victim. *See State v. Ervin*, 2008-NMCA-016, ¶¶ 29-30, 143 N.M. 493, 177 P.3d 1067 (stating that the appellate court will not second-guess the tactics of trial counsel and will not hold that a defendant was prejudiced by his counsel's decision to forego cross-examination on a particular point). Given that Salazar's confession to the police merely corroborates his guilty plea, Defendant's trial tactic seems to have been little more than an attempt to lay the groundwork for an appellate argument of reversible error. As well, no confrontation issue exists because the court ruled that Salazar's statements were not allowed in evidence.

{18} All this aside, Defendant did not argue in the district court that the court's warning to "be careful" prohibited him from presenting a defense, nor did he request that the prosecutor demonstrate what, if any, of Salazar's self-exculpatory or other statements the prosecutor would have sought to elicit from the agents in a re-direct

examination. Defendant's counsel simply decided and announced that he would avoid opening any doors by relying on Salazar's plea to prove that Salazar had admitted murdering the Victim. Defendant did not attempt to develop whether the prosecutor would have attempted to present Salazar's testimonial statements against Defendant, what those statements were, and whether the court would have admitted them. Those questions are purely hypothetical. Because Defendant did not argue in the district court what he now argues on appeal, we conclude that Defendant's argument was not adequately preserved for our review. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that in order to preserve an error for review, the appellant must, with sufficient specificity, alert the district court to the claimed error and invoke a ruling thereon); *see also State v. Janzen*, 2007-NMCA-134, ¶ 16, 142 N.M. 638, 168 P.3d 768 (stating that "the district court's own musings" were not sufficient to preserve an issue for review).

## III.  Defendant's Argument Regarding Agent Baca's Testimony

{19}  By the time Defendant's trial commenced, on December 14, 2011, Agent Baca (hereinafter Baca) was employed by the Rio Arriba County Sheriff's Office, and he was no longer an agent with the State Police. In his capacity as a sergeant for the Sheriff's Office, Baca was at the courthouse, apparently providing security, at the same time that jury selection in the present case was occurring on December 6, 2011.

14

Baca encountered Defendant during a break in jury selection and engaged in a conversation with him. According to a police report submitted by Baca on the eve of trial, during his December 6, 2011, courthouse conversation with Defendant, Defendant confessed to Baca that he had killed the Victim "while he was high on drugs."

{20} On the first day of Defendant's trial, Defendant moved to suppress Baca's report pertaining to the alleged courthouse confession. On December 15, 2011, after a hearing at which Baca testified, the court granted Defendant's motion[1]. In regard to the courthouse conversation, the court concluded that "there were some credibility issues with Mr. Baca" and that it was "highly unlikely that the statement was made"; however, the court expressly ruled that it did not believe that Baca had perjured himself. Rather, the court excluded Baca's report pertaining to his courthouse conversation with Defendant on the ground that it constituted a *Miranda* violation. *See State v. Casares*, 2014-NMCA-024, ¶¶ 5, 14, 318 P.3d 200 (recognizing the well-settled proposition that, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), a suspect must be apprised of his Fifth Amendment rights before he is subjected to custodial interrogation), *cert. denied*, 2014-NMCERT-001, ___ P.3d ___. The court's ruling as to the exclusion of Defendant's purported courthouse confession is not at

---

[1] The December 15, 2011, hearing is not part of the record in this case.

issue in this appeal. What is at issue in this appeal is Defendant's subsequent motion requesting that the court exclude or suppress Baca's testimony pertaining to his March 1, 2010, interview with Defendant.

{**21**}    On December 16, 2011, Defendant filed a motion "to exclude and/or suppress all witness testimony of . . . Baca or in the alternative . . . for [a] mistrial for police misconduct." In his motion, Defendant argued that Baca perjured himself when he testified on December 15, 2011; further, Defendant alleged that Baca "fabricated" his report regarding the March 1, 2010, interview. As such, Defendant requested that the court bar Baca from testifying regarding his March 1, 2010, interview or "grant a mistrial based on [Baca's] misconduct and dishonesty[.]"

{**22**}    The court denied Defendant's motion. The court reasoned that it did not make a finding that Baca perjured himself at the December 15, 2011, hearing, only that "there were some credibility issues with . . . Baca"; and that its finding in that regard did not provide a basis on which to conclude that Baca was lying when he wrote a report pertaining to the March 1, 2010, interview. On appeal, Defendant argues that because the court found that Baca's December 15, 2011, testimony regarding Defendant's alleged courthouse confession raised some credibility issues, the court "was required to conclude that the potential prejudicial effect of Baca's testimony concerning Defendant's [March 1, 2010,] confession outweighed its probative value"

pursuant to Rule 11-403 NMRA. *See id.* (stating that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

{23}     Defendant concedes that he did not rely on Rule 11-403 when arguing, in the district court, that Baca's testimony regarding his March 1, 2010, interview with Defendant should be excluded or suppressed. He argues, however, that the issue was preserved by his argument that because Baca was not credible, he should be prohibited from testifying. We do not agree with Defendant's assertion that the issue of whether Baca's testimony should have been excluded pursuant to Rule 11-403 was preserved in the district court.

{24}     Defendant's argument in the district court focused on what Defendant's counsel characterized as "an impossible situation[.]" Defendant's counsel argued that he could not advise the jury that Baca had been found not credible without also presenting the context of the credibility issue, that is, Defendant's alleged December 6, 2011, courthouse confession. Defendant's counsel further argued that allowing Baca to testify regarding his March 1, 2010, interview with Defendant would be to "allow[] the State to support perjury by putting . . . Baca on the stand to testify about a statement done outside the presence of any recording devices." As a legal basis for these arguments, Defendant's counsel generally referred to "confrontation and . . . due

17

process and [the] right to a fair trial." Thus, Defendant did not invoke a ruling as to Baca's testimony on the basis of Rule 11-403.

**{25}** Nevertheless, because Defendant's Rule 11-403 argument on appeal and his argument in the district court share an underlying premise, we briefly address it. Defendant's argument rests on the notion that because Baca's credibility was lacking in regard to the alleged statement at the courthouse, Baca's report of the March 1, 2010, interview was likewise not credible. The district court rejected this notion and admitted Baca's testimony. The court's decision did not constitute an abuse of discretion.

**{26}** Baca's report regarding his March 1, 2010, interview with Defendant was recorded on a police report, the date of which report is not a matter of record, but the recording was determined by the district court to have been timely. Defendant did not present any evidence to prove or even to suggest that Baca had a motivation to lie in that report. *Cf. State v. Chavez*, 2008-NMCA-125, ¶ 9, 144 N.M. 849, 192 P.3d 1226 (discussing indicia of reliability that should be considered by a district court in deciding whether to admit a contemporaneous written note based on personal observations). Moreover, the statements that Defendant reportedly made to Baca on March 1, 2010, were later corroborated by the evidence that the agents found during their investigation. *Cf. id.* (stating that other evidence or details corroborating a

contemporaneous written statement affect the reliability determination). In light of the evidence corroborating its truthfulness, we cannot conclude that the district court acted contrary to "the logic and effect of the facts and circumstances of the case" by allowing Baca to testify regarding the March 1, 2010, interview, and there was no abuse of discretion. *Gonzales*, 2000-NMSC-028, ¶ 31 (internal quotation marks and citation omitted).

{27} Defendant also argues that the district court "should have declared a mistrial, based on the court's mistake in having permitted Baca to testify" regarding Defendant's March 1, 2010, statements that were "likely obtained in violation of Defendant's *Miranda* rights." Defendant's argument is not supported by the record. Baca testified that once Defendant stated that he would not proceed with the interview until he had an attorney, Baca concluded his interview. *Miranda* protections did not apply to Defendant's voluntary statements thereafter. *See State v. Fekete*, 1995-NMSC-049, ¶¶ 43-44, 120 N.M. 290, 901 P.2d 708 (stating that "*Miranda* protections do not apply in those situations where [a person in police custody] volunteers statements" that were not elicited by police).

{28} Defendant also argues that Baca's testimony in response to cross-examination raised "obvious problems with Baca's credibility[,]" and, therefore, the district court should have granted a mistrial on the basis that Baca's testimony regarding the March

19

1, 2010, interview constituted perjury. Defendant's counsel aggressively and thoroughly cross-examined Baca and, in so doing, succeeded in illuminating issues regarding Baca's memory, competence, or credibility. And although the district court observed that Baca was "not the brightest person" and was "confused about some of the questions[,]" the court found that there was not enough evidence to find that Baca committed perjury.

{29} On appeal, Defendant does not argue that the court erred in failing to find that Baca's testimony was perjured. He argues instead that Baca was "likely either making up the story of Defendant's . . . confession or fabricating the attendant circumstances[.]" Because Defendant does not attack the court's failure to find that Baca's testimony was perjured, Defendant's argument that the court should have granted a mistrial on the basis of Baca's perjury is unavailing. Insofar as the district court did not find that Baca's testimony was perjured, we cannot conclude the court abused its discretion by failing to grant a mistrial on the basis that Baca had, in fact, perjured himself. Any remaining questions regarding Baca's credibility and the persuasive value of his testimony were matters for the jury. *See State v. Fuentes*, 2010-NMCA-027, ¶ 17, 147 N.M. 761, 228 P.3d 1181 (noting that determining the credibility of the witnesses and the weight to be given to their testimony are matters for the jury).

## IV.    Sufficiency of the Evidence

**{30}**    Defendant argues that the jury verdicts were not supported by sufficient evidence.  Defendant's argument is not specific as to the charges or elements of charges that, in his view, were not proved by sufficient evidence; and we will not search the record on Defendant's behalf to determine whether his argument has merit. *See State v. Dominguez*, 2014-NMCA__, ¶ 26, __ P.3d __ (Nos. 31,975 & 32,456, Feb. 17, 2014) (recognizing that this Court will not search the record to find facts to support a defendant's argument).  Moreover, viewing the evidence in a light most favorable to the jury verdicts, Defendant's third statement given to Agent Gallegos on February 23, 2010, which was but a portion of the evidence presented against Defendant over the course of a four-day trial, appears, itself, to constitute sufficient evidence to support the jury verdicts.  We reject Defendant's sufficiency of the evidence argument.

## V.    Defendant's Issue With His Counsel

**{31}**    Defendant argues that the district court erred in refusing to allow his counsel to withdraw following Defendant's allegation that his counsel was ineffective. Defendant states that he, his counsel, and the court discussed the matter in camera, and off the record.  Following this in camera discussion, Defendant withdrew his request to allow his counsel to withdraw, and his counsel represented him for the duration of

trial. Defendant does not develop an argument to show how the foregoing constituted error. We will not consider this unclear and undeveloped argument further. *See State v. Hererra*, 2014-NMCA-007, ¶ 24, 315 P.3d 343.

**CONCLUSION**

{32}     For the foregoing reasons, we affirm Defendant's convictions.

{33}     **IT IS SO ORDERED.**


_____
                                        **JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**LINDA M. VANZI, Judge**