2006-NMCA-110

142 P.3d 944

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesse COOK, Defendant–Appellant.**

**No. 24,957.**

Court of Appeals of New Mexico.

June 13, 2006.

Certiorari Granted, No. 29,954,
Aug. 29, 2006.

Certiorari Denied, No. 29,964, Sept. 5, 2006.

Patricia A. Madrid, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} A jury convicted Defendant of kidnapping, two counts of criminal sexual penetration, and two counts of tampering with evidence. The jury instructions on the tampering charges were identical except for references to different counts in the indictment, and those counts were also identically worded. On appeal, Defendant challenges (1) his convictions for two counts of tampering with evidence on the ground that they violate his right to be free from double jeopardy, and (2) the enhancement of his sentence on the ground that the trial court's factual findings violated his Sixth Amendment right to a jury. In addition, the State asks us to review whether Defendant should have been sentenced for evidence tampering as third, rather than fourth, degree felonies. Because we conclude that convicting Defendant for two counts of tampering with evidence violates his right to be free from double jeopardy, we remand to the trial court for dismissal of one of Defendant's convictions for evidence tampering. We affirm both the enhancement of Defendant's sentence and his sentence for tampering with evidence as a fourth degree felony.

## BACKGROUND AND FACTS

{2} In July 2003, Victim was working at a grocery store when Defendant kidnapped her from the parking lot, drove her out of town, and raped her inside his truck. Victim testified that after penetrating her, Defendant ejaculated on her hand and thigh. Victim later agreed with the State that Defendant had ejaculated on her hand, thigh, *and* the seat of the truck. She stated that Defendant then scrubbed the semen off with a T-shirt. Victim did not know where this T-shirt was because she could not see and only remembered "feeling the cloth on my leg and on my hand."

{3} Defendant proceeded to tell Victim that she needed to "clean that off, that's DNA, that's evidence." He led Victim down to the riverbank, giving her a paper cup to scoop up water to wash herself. Victim scooped up one cup of water and acted as if she was washing herself thoroughly while trying to save some of the evidence. Defendant later released Victim, after which he was apprehended and made statements to police consistent with Victim's statements.

{4} The grand jury indicted Defendant on two counts of tampering with evidence as fourth degree felonies. Each identical count did not reveal the specific factual basis for the charge. Both Counts 4 and 5 read as follows:

> **Tampering with Evidence,** on or about July 17, 2003, in Dona Ana County, New Mexico, the above-named defendant did destroy body fluids, trace evidence and/or physical evidence with the intent to prevent the apprehension, prosecution or conviction of himself, a fourth degree felony, contrary to [NMSA 1978, § ] 30–22–5 [ (2003) ].

The record reveals that there was initially some confusion between the parties as to the basis for the two counts of evidence tampering. However, after the defense rested, defense counsel informed the trial court that there was no dispute about the jury instructions. Those instructions read as follows:

> For you to find the defendant guilty of tampering with evidence as charged in Count 4 [or Count 5], the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant destroyed body fluids, trace evidence and/or physical evidence;
>
> 2. The defendant intended to prevent the apprehension, prosecution or conviction of himself;
>
> 3. This happened in New Mexico on or about the 17th day of July, 2003.

In closing, the State argued to the jury that Count 4 referred to Defendant's beginning to wipe Victim and wiping his truck and that Count 5 was based on making Victim wash at the river. Defense counsel asserted that Count 4 was based on Victim's testimony that Defendant attempted to clean the truck seat

and that Count 5 was based on Victim's washing in the river. Defendant argued that he should be acquitted on Count 5 because Victim did not destroy evidence when she washed at the river. The jury found Defendant guilty on both counts.

{5} The State then filed a notice that it sought enhancement of Defendant's basic sentence for kidnaping under NMSA 1978, § 31–18–15.1 (1993). At sentencing, the trial court found that aggravating circumstances existed and enhanced Defendant's sentence by three years.

## DISCUSSION

{6} Defendant raises two issues on appeal: (1) whether the identical jury instructions violated Defendant's rights to due process and freedom from double jeopardy, and (2) whether the enhancement of Defendant's sentence violated his Sixth Amendment right to have a jury find the facts supporting the enhancement of his sentence. In its answer brief, the State raises the issue of whether Defendant was correctly sentenced for the two counts of evidence tampering. We address each issue in turn.

### The Jury Instructions

{7} Defendant argues that the identical jury instructions on two counts of tampering with evidence violate his right to due process and his right to be free from double jeopardy. More specifically, Defendant argues that the undifferentiated jury instructions, combined with identical counts in the indictment, provided no guidance for the jury about which facts were relevant to each count. Thus, Defendant argues, the jury could have relied on the same facts to convict him of two crimes.

{8} While we note that Defendant did not object to the jury instructions, Defendant may raise a double jeopardy challenge on appeal regardless of whether the issue was preserved. *State v. Rodriguez*, 2004–NMCA–125, ¶ 4, 136 N.M. 494, 100 P.3d 200, *cert. granted*, 2004–NMCERT–10, 136 N.M. 542, 101 P.3d 808; *State v. Soto*, 2001–NMCA–098, ¶ 12, 131 N.M. 299, 35 P.3d 304. Relying on *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977), the State urges us to con-

sider Defendant's argument as an unpreserved attack on the jury instructions. In *Elliott*, our Supreme Court held that the defendant had committed four separate acts for purposes of double jeopardy. *Id.* at 758, 557 P.2d at 1107. However, our Supreme Court also stated that defendant's single-intent doctrine argument was not preserved because the defendant had not sought an instruction on the issue. *Id.* In this case, we also take up the issue of double jeopardy.

{9} Because Defendant was charged with two counts of tampering with evidence, the double jeopardy issue raised in this appeal arises from a subset of multiple punishment claims: a unit-of-prosecution claim. That is, Defendant was charged with more than one violation of the same statute. *See Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). "The pivotal question in multiple punishment cases is whether the defendant is being punished twice for the *same offense.*" *Id.* at 7–8, 810 P.2d at 1227–28. In such cases, we first inquire "whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Id.* at 8, 810 P.2d at 1228. We then look to see "whether the charged acts were sufficiently distinct." *State v. Stewart*, 2005–NMCA–126, ¶ 13, 138 N.M. 500, 122 P.3d 1269.

{10} Our Supreme Court has noted that "the *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended." *State v. Pierce*, 110 N.M. 76, 84–85, 792 P.2d 408, 416–17 (1990) (internal quotation marks and citation omitted). Thus, if the legislative intent is unclear, we presume "the legislature did not intend to fragment a course of conduct into separate offenses." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228. In other words, we presume that the statute was not intended to impose "multiple punishments for acts that are not sufficiently distinct." *State v. DeGraff*, 2006–NMSC–011, ¶ 32, 139 N.M. 211, 131 P.3d 61. We apply this "rule of lenity" because "criminal statutes should be interpreted in the defendant's

favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994).

{11} The record demonstrates that the State and Defendant initially did not agree about the factual basis for each count. The parties differed considerably, at times representing Defendant's telling Victim to wash herself, keeping Victim's undergarments, destroying evidence on Victim's body, wiping the truck seat, and having Victim wash in the river as the facts underlying either of the two counts at different times during the trial. The facts supporting criminal convictions should not be capable of such shifting. The parties' "clarifications" of the instructions only served to confuse the factual bases for each count.

{12} The evidence itself was occasionally vague and equivocal, as shown concerning whether Defendant wiped the truck seat. Victim initially testified that Defendant ejaculated "on my hand and my thigh," and that "he scrubbed it off with a T-shirt." Victim did not mention the truck seat. Subsequently, the following interchange took place:

[State]: You said he had ejaculated and got some on your leg and your hand and on the seat?

[Victim]: Uh-hum.

[State]: Do you know where that T-shirt was that he cleans the seat with?

[Victim]: No, I don't. At the time, I assumed it was the shirt taken from me. But I have no proof of that. I just remember feeling the cloth on my leg and on my hand.

The question is not evidence. This testimony does not clearly establish that Defendant cleaned the seat, and Victim never volunteered that he did.

{13} In light of this confusion, we are not persuaded that the evidence supports two counts of tampering. Our Supreme Court has recently addressed the issue of what constitutes unitary conduct in the context of multiple counts of tampering with evidence. *See DeGraff,* 2006–NMSC–011, ¶ 34, 139 N.M. 211, 131 P.3d 61. In *DeGraff,* the Court concluded that the tampering with evi-

dence statute, Section 30–22–5, "does not clearly define the unit of prosecution." *Id.* ¶¶ 34–35. Thus, we must now turn to whether Defendant's acts bore sufficient "indicia of distinctness." *Id.* ¶ 35 (internal quotation marks and citation omitted). In doing so, we consider "the timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims." *Id.*

{14} In *DeGraff,* the defendant was convicted of five counts of tampering with evidence for hiding five different things: a knife, a glass, a hammer, a car, and clothing. *Id.* ¶ 32. Our Supreme Court reduced the five counts to three, reasoning that the evidence was disposed of "at three distinct times in different locations." *Id.* ¶ 36. First, the defendant fled the scene of the crime in the victim's car and threw the knife, glass, and hammer from the car on the highway. *Id.* ¶ 3. The next day, he abandoned the car and returned to his home. *Id.* After returning home, the defendant changed his clothes, putting the clothes he had been wearing in a pillowcase and hiding them in a van outside his home. *Id.* These three episodes, our Supreme Court concluded, formed the bases of three separate counts rather than five. *Id.* ¶ 36.

{15} Our Supreme Court further concluded that disposing of the knife, glass, and hammer constituted only one count because those items were "gathered in a short period of time" and "thrown together, in a single box, on the side of the road." *Id.* ¶ 38. Our Supreme Court emphasized that

There is no indication that Defendant's intentions were different with respect to each weapon. To the extent that the crime had identifiable victims, they were the same with respect to each weapon.... [T]he same interest was harmed when the knife, glass, and hammer were hidden, and we have already found that these items were hidden at the same time and in the same location.

*Id.*

{16} In the current case, Victim testified that after Defendant ejaculated on her hand and thigh, "he scrubbed it off with a T-shirt,

and then he steps back and looks and says, Oh, you better clean that off, that's DNA, that's evidence." Defendant then told Victim to go down to the river and clean herself. The truck was apparently parked next to the river, and Victim's testimony indicates that the washing on the river bank occurred after the wiping in the truck. In our view, the same evidence was being destroyed in an uninterrupted course of conduct. There was a single victim and Defendant had one motive-to destroy the specific DNA evidence. There was no lapse in time between cleaning in the truck and at the river, no intervening act, and getting out of the truck to complete the cleaning process does not demonstrate a significant change in location. We therefore conclude that only one continuous act of tampering occurred. *Cf. State v. Salazar*, 2006–NMCA–066, ¶ 30, 139 N.M.603, 136 P.3d 1013.

{17} Defendant notes that the problem in this case is that even if the facts demonstrated that Defendant's conduct *could* be divided into distinct acts, the jury could not tell from the instructions which act (or acts) formed the basis of each charge. Defendant argues that a similar issue was addressed by the Sixth Circuit in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005). In *Valentine*, the defendant was charged with multiple identically worded counts of sexual abuse. *Id.* at 628. The circuit court held that "the multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy." *Id.* at 631. In that case, the indictment's identical counts presented due process problems because of lack of notice. *Id.* at 634. Double jeopardy problems arose because "the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense," since it was unclear which facts supported which charges. *Id.* at 634–35.

{18} The State argues that *Valentine* is inapplicable to this case because Defendant has not challenged the indictment and because the parties, the trial court, and the jury understood the factual distinction between the two counts of tampering with evidence. We agree with the State that Defendant has not preserved any due process issues arising from the indictment. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). However, we are not persuaded that *Valentine* is inapplicable to the double jeopardy issue in this case.

{19} As described above, the absence of a factual basis for each charge in the written instructions, in light of the confused discussions, could have resulted in the jury convicting Defendant of the same crime twice for a unitary course of conduct. As the Sixth Circuit Court explained in *Valentine*, unspecified conduct would not have been problematic if Defendant had only been charged with one count of the offense, but "[t]he constitutional errors in this case lie in the multiple identical counts rather than the generic statutory language of the charges." *Valentine*, 395 F.3d at 637. Similarly, in this case, although the language of the jury instructions followed the language of UJI 14–2241 NMRA, because the instructions differed only insofar as they incorporated by reference the language of two separate but identical counts from the indictment, they did not make clear to the jury which conduct it should consider to support each charge. We therefore remand for the trial court to dismiss one conviction and sentence for tampering with evidence.

**The Finding of Aggravating Circumstances**

■ {20} Defendant also argues that the enhancement of his kidnaping conviction following the trial court's finding of aggravating circumstances and subsequent increase in his sentence, violated his right under the Sixth Amendment—articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)—to have that finding made by a jury. In *Apprendi*, the United States Supreme Court wrote: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be sub-

mitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

{21} Under Section 31–18–15.1, the trial court may alter a defendant's basic sentence if it finds after a hearing "any mitigating or aggravating circumstances surrounding the offense or concerning the offender." In this case, the trial court sentenced Defendant to nine years for kidnaping and enhanced it by three years because it found Defendant had "put a great deal of planning into these crimes," and "forced the victim to remain blindfolded during the incident, increasing her terror."

{22} Prior to Defendant's appeal, this Court held in *State v. Frawley*, 2005–NMCA–017, ¶ 13, 137 N.M. 18, 106 P.3d 580, *overruled by State v. Lopez*, 2005–NMSC–036, ¶ 62, 138 N.M. 521, 123 P.3d 754, that enhancement of a sentence pursuant to Section 31–18–15.1 was unconstitutional under *Blakely*. Our Supreme Court has since held that because New Mexico's legislature has determined that a trial court must hold a hearing to determine whether aggravating or mitigating circumstances exist to justify altering a sentence, the legislature created ranges of permissible sentences with enhanced sentences at the top of that range. *Lopez*, 2005–NMSC–036, ¶ 45, 138 N.M. 521, 123 P.3d 754. The Supreme Court concluded that sentences enhanced in this way do not increase the statutorily-authorized maximum sentence, and thus are constitutional. *Id.* ¶ 55. In light of our Supreme Court precedent in *Lopez*, therefore, we conclude that the enhancement of Defendant's sentence did not violate his Sixth Amendment rights.

**Sentence for Tampering With Evidence**

{23} In its answer brief, the State asks us to review whether Defendant was correctly sentenced for tampering with evidence. The State argues that the 2003 amendment to Section 30–22–5 was in effect at the time of Defendant's sentencing, and thus Defendant should have been sentenced for evidence tampering as third degree rather than fourth degree felonies. *See DeGraff*, 2006–NMSC–011, ¶ 34, 139 N.M. 211, 131 P.3d 61 (observing that prior to the 2003 amendment, Sec-

tion 30–22–5 was punishable as a fourth degree felony regardless of the severity of the underlying crime). The State acknowledges that this argument was not made below. Relying on *State v. Shay*, 2004–NMCA–077, ¶ 6, 136 N.M. 8, 94 P.3d 8, and *State v. Bachicha*, 111 N.M. 601, 608, 808 P.2d 51, 55 (Ct.App. 1991), it contends that an argument that a sentence was illegal can be made for the first time on appeal by either the defendant or the State.

{24} While the State may challenge an illegal sentence for the first time on appeal, the State must comply with the requirements of Rule 12–202 NMRA in filing a cross-appeal under Rule 12–201 NMRA. *Bachicha*, 111 N.M. at 608–09, 808 P.2d at 55–56. In *Bachicha*, we addressed the issue as one of judicial efficiency, even though the State had not filed a cross-appeal but simply raised the issue in its answer brief. *Id.* at 609, 808 P.2d at 56. The State here has also raised the issue in its answer brief without filing a cross-appeal. In this case, however, we decline to address the issue; having ordered dismissal of only one count without reversing the entire judgment, this issue will not arise on remand and judicial efficiency cannot be served.

**CONCLUSION**

{25} For the foregoing reasons, we affirm the enhancement of Defendant's sentence for kidnaping, but we remand to the trial court with directions to dismiss one of the convictions for tampering with evidence.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and IRA ROBINSON, Judge.