This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37838**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER D. MITCHELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Rothstein Donatelli LLP
Alicia C. Lopez
Marc M. Lowry
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Christopher Mitchell appeals his convictions for one count of criminal sexual penetration (child under 13), pursuant to NMSA 1978, Section 30-9-11(D)(1) (2009), and seven counts of criminal sexual contact of a minor (person in position of authority), pursuant to NMSA 1978, Section 30-9-13(B)(2)(a) (2003). Defendant argues that (1) his trial counsel had an actual conflict of interest based on his former representation of a witness, (2) he was subject to ineffective assistance of counsel, (3)

two of his convictions violate his right to be free from double jeopardy, and (4) three of his convictions are not supported by sufficient evidence. We reverse one of Defendant's convictions because of insufficient evidence but otherwise affirm.

**BACKGROUND**

**{2}** In 2006, Defendant and Mother began an eight-and-a-half-year relationship. During their time together, Defendant lived with Mother and her children and acted as a stepfather to K.S., Mother's daughter. Defendant, Mother, and her children moved into the Canal Trailer Park in early 2011. While living at this trailer park, Defendant and K.S., who was twelve years old at the time, started engaging in sexual intercourse. K.S. turned thirteen in March 2011, and the two continued to have sexual intercourse regularly over the next several years at each place they lived.

**{3}** K.S. and Mother contacted police in 2016 and reported Defendant's abuse of K.S. As a result, Defendant was charged with one count of criminal sexual penetration of a minor in the first degree (child under 13), pursuant to Section 30-9-11(D)(1), and seven counts of criminal sexual contact of a minor in the second degree (person in position of authority), pursuant to Section 30-9-13(B)(2)(a), based on the abuse that occurred at each location at which Defendant and K.S. lived. He was found guilty of all eight charges. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of specific facts where necessary to our analysis.

**DISCUSSION**

**I.      Defense Counsel Did Not Have a Per Se Conflict of Interest Based on His Prior Representation of Mother**

**{4}** Defendant first argues that he received ineffective assistance of counsel based on the conflict of interest arising from defense counsel's previous representation of Mother, who was one of the State's witnesses. Defendant argues counsel's prior representation created an actual, concurrent conflict of interest resulting in a per se conflict, which could not be waived by Defendant, and that was not waived by either Defendant or Mother. The State contends that the record is insufficient to make out a factual basis for ineffective assistance of counsel and a per se conflict of interest did not exist because the conflict did not involve a matter of significant relevance to the incidents that formed the basis for the charges against Defendant. We address Defendant's arguments in turn.

**{5}** "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel." *State v. Dyke*, 2020-NMCA-013, ¶ 30, 456 P.3d 1125 (omission, alteration, internal quotation marks, and citation omitted). This includes "[t]he right to effective assistance of counsel free from conflicts of interests[.]" *State v. Sosa*, 1997-NMSC-032, ¶ 20, 123 N.M. 564, 943 P.2d 1017, *abrogated on other*

*grounds by State v. Porter*, 2020-NMSC-020, ¶ 7 n.2, 476 P.3d 1201. "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted).

**{6}** Normally, "[i]n order to establish a prima facie case of ineffective assistance of counsel on appeal, [the d]efendant must demonstrate that his counsel's performance fell below that of a reasonably competent attorney and that he was prejudiced by his counsel's deficient performance." *State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 25, 409 P.3d 992 (internal quotation marks and citation omitted). However, "the analysis of an ineffective assistance of counsel claim based on a conflict of interest requires a different analysis[.]" *Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657.

**{7}** Under the conflict-based ineffective assistance of counsel test, "[a] defendant must show that counsel[] actively represented conflicting interests and that an actual conflict of interest adversely affected his or her lawyer's performance." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). "When a defendant demonstrates that an actual conflict of interest undermined counsel's loyalty, prejudice is presumed." *State v. Martinez*, 2001-NMCA-059, ¶ 24, 130 N.M. 744, 31 P.3d 1018 (internal quotation marks omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). In order for prejudice to be presumed, "there must be an actual conflict of interest and not just a possibility of a conflict." *State v. Santillanes*, 1990-NMCA-035, ¶ 7, 109 N.M. 781, 790 P.2d 1062. "[O]verlapping representation ordinarily is not enough to justify the presumption of prejudice that arises under *Strickland* when there is an actual conflict[.]" *Rael*, 2007-NMSC-006, ¶ 16. In order to find an actual conflict, the defendant

> must show that while counsel represented [the d]efendant there was an ongoing professional relationship between [the witness at issue] and defense counsel that requires the protection of attorney-client privilege. Further, [the d]efendant must show that counsel's representation of [the witness at issue] involved a matter relevant to [the d]efendant's trial. If there is significant relevance, a per se conflict of interest can be identified.

*Id.* ¶ 21. "Absent an actual conflict, the defendant has no claim." *State v. Case*, 1984-NMSC-012, ¶ 9, 100 N.M. 714, 676 P.2d 241.

**{8}** Under *Rael*, "[a] professional relationship is ongoing, even if formal representation has ended, if circumstances exist such that the attorney-client privilege may be violated." 2007-NMSC-006, ¶ 19 (internal quotation marks and citation omitted). This includes when "defense counsel would be called upon to cross-examine the witness or former client on matters concerning defense counsel's representation of that witness." *Id.* The State concedes, and we agree, that defense counsel's representation of Mother and Defendant satisfies the first prong of the test in *Rael*, that an ongoing professional relationship existed between defense counsel and the witness at issue. *See id.* Defense counsel previously represented Mother a year before Defendant's trial. Because defense counsel's professional relationship with Mother extended beyond the

termination of his representation of her and overlapped with his representation of Defendant, the first prong of *Rael* is satisfied.

**{9}**   Turning to the second prong of the *Rael* analysis—whether counsel's representation of the witness involved a matter of significant relevance to Defendant's trial—the record before us is insufficient to determine whether the prong has been met. *See id.* ¶ 21. The limited information in the record indicates that defense counsel represented Mother in a Children, Youth and Families Department (CYFD) case, which she claimed had to do with her son. Both defense counsel and Mother stated that her case did not involve Defendant in any way. The limited information about Mother's previous case is insufficient to establish the necessary connection between defense counsel's representation of Mother and Defendant. Given this, we cannot conclude that a per se conflict existed. *See id.*

**{10}**   Defendant's other arguments regarding defense counsel's representation of Mother and Defendant would require us to rely on an inference to establish an actual conflict. Defendant asserts CYFD sued Mother regarding her ability to be an effective parent, thus it was relevant to impeach her as a witness. Again, the record contains no information relating to the nature of the CYFD case. *See State v. George*, 2020-NMCA-039, ¶ 19, 472 P.3d 1235 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). We simply do not know the nature of the previous matter, and without that knowledge, we are unable to determine whether it was related to this proceeding.

**{11}**   Regarding Defendant's remaining argument that defense counsel's poor trial performance can be explained only by his on-going loyalty to Mother, there is no evidence that defense counsel abandoned a specific defense strategy based on any duty to Mother. *See Santillanes*, 1990-NMCA-035, ¶ 10 (concluding that an actual conflict existed based on the defense counsel's representation of a co-defendant because in establishing a defense for the co-defendant, defense counsel was forced to abandon a strategy that could have been used to exonerate the defendant and the co-defendant was unable to be used as a witness for the defendant). Again, there is insufficient information in the record to infer the actions of defense counsel were based on an actual conflict rather than reasonable trial tactics. *Compare State v. Gonzalez*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162 ("The presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance."), *with Martinez*, 2001-NMCA-059, ¶ 31 (concluding an actual conflict of interest arose when the defense counsel was possibly present at the scene of the crime for which the defendant was being charged and counsel's questioning and closing argument directly responded to the inference that counsel was at the scene).

**{12}**   Because we determine that Defendant failed to establish an actual conflict of interest, the appropriate manner of pursuing Defendant's claim for ineffective assistance of counsel is in a collateral proceeding. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the [district]court for an evidentiary hearing on ineffective assistance of counsel is rare.

Ordinarily, such claims are heard on petition for writ of habeas corpus[.]"); *State v. Turner*, 2017-NMCA-047, ¶ 39, 396 P.3d 184 ("Because many of [the defense counsel's] alleged failures are based on facts that are not of record, [the d]efendant's ineffective assistance of counsel claim is likely more appropriately pursued, if at all, in habeas corpus proceedings."); *State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (holding that without a record on appeal, this Court cannot consider claims of ineffective assistance of counsel, and the proper avenue of relief is a post-conviction proceeding); *see also State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

**{13}** The possible conflict in question raises concerns, however, specifically related to defense counsel's failure to disclose his prior representation until the first day of the trial, defense counsel's failure to speak to Mother regarding this case before trial because he felt it would be inappropriate for him to do so, and the fact that Defendant was not given the opportunity to have the conflict explained or to properly waive the conflict. *See* Rule 16-107(A)(2) NMRA ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client[.]"); Rule 16-107(B)(4) (requiring clients affected by a concurrent conflict to give informed consent confirmed in writing in order for a lawyer to represent one of the affected clients). Despite these concerns, it would be conjecture based on the limited record to determine that an actual conflict was present, and a habeas corpus proceeding remains the appropriate avenue to pursue these claims.

## II.     Defense Counsel Did Not Provide Ineffective Assistance of Counsel

**{14}** Next, Defendant contends that defense counsel committed several errors that deprived him of effective assistance of counsel, individually and cumulatively, namely: (1) failure to move to suppress unlawfully obtained evidence, (2) failure to move to exclude prejudicial methamphetamine evidence, (3) failure to conduct pretrial interviews, (4) failure to investigate defenses, (5) failure to sufficiently examine witnesses, (6) the decision to put Defendant on the stand, and (7) "deficiencies" regarding the State's rebuttal witness, J.H. Our review of this issue is de novo. *See State v. Montoya*, 2015-NMSC-010, ¶ 57, 345 P.3d 1056 ("Claims of ineffective assistance of counsel are reviewed de novo.").

**{15}** As previously stated, we address claims of ineffective assistance of counsel under a two-part test, which is derived from *Strickland*, 466 U.S. at 687. *See Uribe-Vidal*, 2018-NMCA-008, ¶ 25; *Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666. "In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Trammell*, 2016-NMSC-030, ¶ 16, 387 P.3d 220 (internal quotation marks and citation omitted). When the facts

necessary to establish ineffective assistance are not part of the record, but an appellant makes a prima facie showing of ineffective assistance of counsel, an appellate court may remand for an evidentiary hearing. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980.

**{16}** We presume the defendant received effective assistance of counsel "unless [the] defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *State v. Sloan*, 2019-NMSC-019, ¶ 33, 453 P.3d 401 (internal quotation marks and citation omitted); *see State v. Plouse*, 2003-NMCA-048, ¶ 6, 133 N.M. 495, 64 P.3d 522 ("The defendant has the burden of proving both prongs of the test." (internal quotation marks and citation omitted))*, abrogated on other grounds by State v. Garza*, 2009-NMSC-038, ¶¶ 47–48, 146 N.M. 499. Further, "[f]ailure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948; *see Lukens v. Franco*, 2019-NMSC-002, ¶ 19, 433 P.3d 288 ("A court may dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice to avoid the deficient performance analysis if this simplifies disposition." (internal quotation marks and citations omitted)).

**{17}** In addressing the first prong, the defendant "must demonstrate that . . . counsel's performance was deficient in that it fell below an objective standard of reasonableness[.]" *State v. Allen*, 2014-NMCA-047, ¶ 17, 323 P.3d 925 (internal quotation marks and citation omitted). "We do not find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct." *State v. Bernard*, 2015-NMCA-089, ¶ 35, 355 P.3d 831 (internal quotation marks and citation omitted). "In order to overcome the presumption that counsel acted reasonably, [the d]efendant must show that the challenged action could not be considered sound trial strategy." *State v. Miera*, 2018-NMCA-020, ¶ 31, 413 P.3d 491 (internal quotation marks and citation omitted).

**{18}** In order to prove that defense counsel's incompetence caused prejudice, "there must have been a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Lukens*, 2019-NMSC-002, ¶ 17 (internal quotation marks and citation omitted). To meet this burden, "counsel's deficient performance must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *State v. Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M. 719, 204 P.3d 44 (alteration, internal quotation marks, and citation omitted). "[M]ere evidentiary prejudice is not enough." *Roybal*, 2002-NMSC-027, ¶ 25. The prejudice must be such "that there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Id.* (internal quotation marks and citation omitted). A reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

**{19}** We regard defense counsel's presentation of and objections to evidence and witnesses as falling within the ambit of trial tactics and strategy. *See State v. Crain*,

1997-NMCA-101, ¶ 25, 124 N.M. 84, 946 P.2d 1095. "[A]ppellate court[s] will not second-guess trial tactics and strategy of trial counsel on appeal[.]" *State v. Baca*, 1993-NMCA-051, ¶ 28, 115 N.M. 536, 854 P.2d 363. Whether to object to certain testimony, the choice of witnesses called, and the manner of examination are generally matters of trial strategy. Hence, we will not examine defense counsel's decisions regarding evidence to exclude, examination of witnesses, the decision to allow Defendant to testify, and his decisions regarding the State's rebuttal witness—as alleged in claims (2), (5), (6), and (7). To the extent that these claims have merit, we believe that they would be more appropriately pursued in a habeas corpus proceeding.

**{20}** Turning to Defendant's remaining claims of error underpinning his ineffective assistance of counsel claim, we conclude that Defendant fails to demonstrate the requisite prejudice in order to establish a prima facie case of ineffective assistance of counsel. We explain.

**{21}** Defendant first argues that defense counsel was ineffective by his failure to move to suppress introduction of Defendant's journals, found as a result of an unlawful search of his storage unit. Even if we were to conclude that defense counsel's failure to move to suppress this evidence fell below the objective standard of reasonableness, such a failure is insufficiently prejudicial under the facts of this case. The journals were only one piece of incriminating evidence regarding Defendant's long-term sexual abuse of K.S. K.S. testified about her sexual relationship with Defendant, and also explained why she previously denied the sexual contact to police. Mother testified regarding her suspicions about an inappropriate relationship between Defendant and K.S. that resulted in a report to CYFD in 2014 and a request for a welfare check in 2015. Multiple witnesses corroborated these reports. Although at trial Defendant denied a sexual relationship with K.S. while she was underage, he admitted to writing a letter that indicated that his drug use had likely affected his judgment and allowed him to "[cross] boundaries" that he should not have, including engaging in sexual activity with K.S. and another teenaged girl. J.H., a friend of K.S.'s, testified that she witnessed Defendant perform oral sex on K.S. The State presented additional evidence, including incriminating text messages between Defendant and K.S. after she was ordered not to contact him based on her probation conditions. Based on the amount of evidence and testimony regarding the nature and extent of Defendant's sexual relationship with K.S., defense counsel's failure to move to suppress the admission of the journals was not sufficiently prejudicial to establish a prima facie case of ineffective assistance of counsel.

**{22}** Defendant next argues that defense counsel's failures to conduct pretrial interviews of Mother and other witnesses and failure to investigate Mother's background support his ineffective assistance of counsel claim. He claims these failures precluded defense counsel from finding impeachment material that could have been used in cross-examination.

**{23}** First, as to his allegation that defense counsel failed to conduct pretrial interviews of other witnesses besides Mother, Defendant does not direct us to any portion of the

record in support of this claim and our own review of the record contains insufficient information to support the claim. *See* Rule 12-318(A)(4) NMRA (requiring that appellate briefing include "an argument which, with respect to each issue presented [containing] . . . citations to authorities, record proper, transcript of proceedings, or exhibits relied on"); *State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."). Further, we will not infer that such interviews did not take place based on the nature and extent of defense counsel's cross-examination of witnesses, which may be explained based on trial strategy. *See State v. Orosco*, 1991-NMCA-084, ¶ 35, 113 N.M. 789, 833 P.2d 1155 (noting that matters of trial tactics and strategy are within the control of trial counsel).

**{24}** As to Defendant's arguments regarding defense counsel's failures relating to Mother, even assuming that defense counsel's actions were inadequate, Defendant has not shown how the omission of a pretrial interview with Mother prejudiced Defendant. Mother was specifically cross-examined to elicit testimony to support Defendant's claim that he did not have a sexual relationship with K.S. Mother admitted that she did not witness Defendant and K.S. together "sexually," that she never saw them have sex, and admitted that she did not know whether the incriminating items she found belonged to Defendant. Defendant's claim that a reasonably competent attorney would have adduced information regarding the extent of Mother's drug use during the time she perceived inappropriate behavior between Defendant and K.S. is undermined because Mother was questioned about her drug use and the jury was aware that she was using methamphetamine around the time she reported her suspicions to police in February 2014. Defendant has failed to establish a reasonable probability that eliciting other types of impeachment testimony would have affected the outcome of trial. *Cf. Lytle*, 2001-NMSC-016, ¶ 27 ("With respect to the showing that counsel's deficient performance prejudiced the defense, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks and citation omitted)).

**{25}** We reach the same conclusion regarding Defendant's assertion regarding the failure to obtain Mother's CYFD file. Even assuming that such a failure is evidence of ineffective representation, we fail to see how it prejudiced Defendant. Although we assume Defendant would have us infer that the CYFD file contained information that could have reflected poorly on Mother, similar evidence regarding Mother's shortcomings, such as Mother's methamphetamine use during the time that Defendant and K.S. engaged in a sexual relationship, and her failure to notice the inappropriate relationship between the two, was made evident to the jury. Defendant provides no evidence that any other impeachment testimony defense counsel could have obtained from Mother's CYFD file would not have been cumulative of evidence presented at trial. Without more, we cannot conclude that any such failure related to the CYFD file affected the outcome of the trial, and Defendant has not met his burden to establish a claim for ineffective assistance of counsel. *See Trammel*, 2016-NMSC-030, ¶ 23 (noting that, on a valid ineffective assistance of counsel claim, "a defendant must show that there is a reasonable probability that, but for counsel's [deficiencies], the result of the

proceeding would have been different" (alteration, internal quotation marks, and citation omitted)).

**{26}** As to Defendant's final contention that reversal is warranted because the combination of the instances of ineffective assistance of counsel resulted in cumulative prejudice, because we hold that Defendant has not established prejudice, it follows that no cumulative prejudice occurred. *Cf. State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 (stating that when there is no error, "there is no cumulative error"). Again, we note that to the extent that these claims have merit, we believe that they would be more appropriately pursued in a habeas corpus proceeding.

### III. Defendant's Convictions Based on Count 3 and 4 Do Not Violate Double Jeopardy

**{27}** Defendant argues that his right to be free from double jeopardy was violated based on his convictions relating to Count 3 and Count 4 of his indictment. "Double jeopardy challenges involve constitutional questions of law that we review de novo." *State v. Simmons*, 2018-NMCA-015, ¶ 25, 409 P.3d 1030.

**{28}** In relevant part, the grand jury indicted Defendant on two counts of criminal sexual penetration of a minor in the second degree. Count 3 and 4 read:

> Criminal Sexual Contact of Minor in the Second Degree (Person in Position of Authority) (7031), on or between January 01, 2013 and June 1, 2013, . . . [D]efendant did touch or apply force to the unclothed intimate parts of [K.S.], to wit: her vulva and/or vagina[.]

> Criminal Sexual Contact of Minor in the Second Degree (Person in Position of Authority) (7031), on or between January 01, 2013 and June 1, 2013, . . . [D]efendant did intentionally perform cunnilingus on [K.S.] by touching the intimate parts of [K.S.] with his tongue[.]

The two jury instructions relating to the charges were identical, except that they referenced the separate counts, and read as follows:

> For you to find [D]efendant guilty of criminal sexual contact of a minor by use of coercion by a person in position of authority, as charged in Count 3 [or 4], the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant touched or applied force to the unclothed vulva and/or vagina of [K.S.] and/or placed his penis in her vagina;
> 2. [D]efendant was a person who by reason of [D]efendant's relationship to [K.S.] was able to exercise undue influence over [K.S.] AND used this authority to coerce [K.S.] to submit to sexual contact;

3. [K.S.] was at least thirteen (13) but less than eighteen (18) years old;
4. This happened in New Mexico on or between January 1, 2013 and June 1, 2013.

**{29}** Defendant premises his double jeopardy argument on *Valentine v. Konteh*, 395 F.3d 626, 628 (6th Cir. 2005), in which most of the defendant's convictions were overturned when the prosecution provided no factual basis in the indictment or at trial to differentiate between counts, and instead relied on child's statement that abuse had occurred "about [twenty] times." The Sixth Circuit concluded that, based on the indictment, "the undifferentiated counts introduced the very real possibility that [the defendant] would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634-35. Defendant relies on *State v. Dominguez*, 2008-NMCA-029, ¶¶ 10-11, 143 N.M. 549, 178 P.3d 834, and *State v. Cook*, 2006-NMCA-110, ¶¶ 17-19, 140 N.M. 356, 142 P.3d 944, both of which cite favorably to *Valentine*, to argue that the identical jury instructions he received violated his right to be free from double jeopardy. He argues that because the jury instructions were identical and the testimony adduced at trial did not sufficiently characterize two distinguishable acts, the jury could not determine which factual allegations underlay each charge. We disagree.

**{30}** *Dominguez* addressed multiple, undifferentiated *charges* before trial. This Court in *Dominguez* held that because the charges were identical, with no distinguishing facts or circumstances, dismissal of multiple counts of sexual abuse was appropriate in order to protect the defendant from double jeopardy. *See* 2008-NMCA-029, ¶¶ 10-11. In this case, Defendant was charged with separate instances of conduct that were factually distinguishable—in Count 3 for touching or applying force to the unclothed intimate parts of K.S., whereas Count 4 was for intentionally performing cunnilingus—but which occurred in the same time period. Thus, the counts are distinguishable, and *Dominguez* is not dispositive in this matter.

**{31}** *Cook* also is not controlling. In *Cook*, the defendant was charged with identical counts of tampering with evidence and given two identical jury instructions regarding those charges. 2006-NMCA-110, ¶ 4. In that case, the defendant raped the victim in his vehicle and then forced her to clean off in a river. *Id.* The victim's initial testimony was that he ejaculated on her body and then scrubbed it with a t-shirt. *Id.* ¶ 12. A confusing discussion occurred where the prosecutor referenced the defendant cleaning off her body and the seat of the vehicle but the victim did not affirmatively express that the defendant also cleaned off the seat. *Id.* ¶ 12. The defendant's two charges were based on his cleaning of the seat and then cleaning the victim's body. *Id.* The Court held that "the absence of a factual basis for each charge in the written instructions, in light of the confused discussions, could have resulted in the jury convicting [the d]efendant of the same crime twice for a unitary course of conduct." *Id.* ¶ 19.

**{32}** Here, again, there are specific differences in the conduct described in each charge. The jury instructions, though identical in all other ways, referred to these two

separate charges. Further, there was no unclear testimony that led to ambiguous evidence surrounding the convictions. K.S. began by explaining that she lived at a home on Gray Street in 2013. She testified that in 2013, she continued to have sex with Defendant and that at Gray Street sexual encounters were "so common. It was all the time[.]" She also testified that Defendant performed oral sex on her, and clarified that the oral sex occurred less frequently than the sexual intercourse while she was at Gray Street. Further, the State distinguished the two charges in closing argument, explaining that Count 3 referred to sexual intercourse while Count 4 referenced oral sex. Based on the foregoing, we cannot conclude that there was confusion, even with the identical instructions, that could have resulted in the jury convicting Defendant of the same crime twice for a unitary course of conduct. *See id.* ¶ 19.

{33}    The evidence presented, paired with the specific language in the two separate charges, was sufficient to support the two convictions without violating Defendant's right to be free from double jeopardy. *See State v. Martinez*, 2007-NMCA-160, ¶¶ 11-13, 143 N.M. 96, 173 P.3d 18 (concluding that no double jeopardy violation occurred when the defendant was charged with five identical but separate counts of criminal sexual penetration of a minor over a period of time and the jury was presented with identical jury instructions when there was sufficient evidence to distinguish the different counts based on the victim's testimony of separate incidents); *State v. Salazar*, 2006-NMCA-066, ¶¶ 30-31, 139 N.M. 603, 136 P.3d 1013 (concluding no double jeopardy violation occurred when the defendant was found guilty of two counts of criminal sexual penetration of a minor despite identical charges and jury instructions when there was sufficient evidence presented where the jury could have found two separate incidents occurred).

## IV.    The State Presented Sufficient Evidence to Uphold Counts 2 and 6 but Insufficient Evidence to Support Count 5

{34}    In his final argument, Defendant claims there is insufficient evidence to support convictions that were based on three counts that required the jury to find he "touched or applied force to the unclothed vulva and/or vagina" of K.S. "and/or placed his penis in her vagina" for three separate time periods: (1) between March 15, 2011 and September 1, 2011 for Count 2; (2) between February 6 and February 8, 2014 for Count 5; and (3) between January 1, 2015 and June 1, 2015 for Count 6; We uphold Defendant's convictions based on Counts 2 and 6 and reverse his conviction for Count 5.

{35}    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). Lastly, on appeal, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and

resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

## A.     The State Presented Sufficient Evidence to Support Counts 2 and 6

**{36}**    As to Defendant's arguments that there was insufficient evidence to support a conviction for Counts 2 and 6—for conduct between March 15, 2011 and September 1, 2011, and conduct between January 1, 2015 and June 1, 2015—we disagree.

**{37}**    The analysis required for sufficiency of the evidence in a resident child molester case is different from the traditional sufficiency when multiple convictions over a proscribed time period are at issue. Resident child molester cases involve "defendants who have regular access to and control over children whom they sexually abuse in secrecy for long periods of time." *State v. Lente*, 2019-NMSC-020, ¶ 1, 453 P.3d 416. "[C]hild victims in resident child molester cases typically testify to repeated acts of molestation occurring over a substantial period of time but are generally unable to furnish specific details, dates or distinguishing characteristics as to individual acts or assaults." *Id.* ¶ 55 (alteration, internal quotation marks, and citation omitted). This poses a problem for convicting defendants based on multiple acts over long periods of time committed against children who only can only provide generic testimony about their abuse. *Id.* ¶ 62. Our Supreme Court has elected to not require child victims in these cases to furnish exact dates the crimes occurred to sustain multiple convictions over a generic period of time. *Id.* ¶¶ 61-62. Instead of requiring such exacting testimony, our Supreme Court has adopted a test requiring that a child victim in a resident child molester case provide testimony satisfying the following three requirements for multiple convictions to survive sufficiency review: (1) "the child victim must describe the proscribed act or acts committed with sufficient specificity to establish that unlawful conduct did in fact occur [;]" (2) "the child must describe the number of proscribed acts committed with sufficient certainty to support each of the counts alleged in the information or indictment[;]" and (3) "the child must describe the general time period in which the proscribed acts occurred." *Id.* ¶¶ 67-70.

**{38}**    K.S.'s testimony, analyzed through *Lente*'s resident child molester framework, was sufficient to support Defendant's conviction for Count 2. Her testimony specifically established that she had sexual intercourse with Defendant hundreds of times, "more times than [she] can count[,]" during 2011 while the family lived at Canal Trailer Park. Consistent with *Lente*'s requirements, K.S. described the act with specificity, testified that sexual intercourse occurred hundreds of times, more than enough to satisfy the one count charged, and generally described the time period in which the proscribed act occurred. *See id.* ¶ 57 ("The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance." (alteration, internal quotation marks, and citations omitted)). Although K.S. did not expressly state they had intercourse on an exact date during Count 2's charging period, we disregard all inferences contrary to upholding the verdict as her testimony supports that the abuse

happened numerous times in 2011—sufficient to uphold Defendant's conviction for Count 2. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{39}** Defendant similarly argues insufficient evidence was presented for Count 6 to prove that misconduct occurred between January 1, 2015 and June 1, 2015, because, in her testimony, K.S. did not specify a specific date range for the acts involved. Again, we disagree with Defendant's argument.

**{40}** K.S. testified that she lived at Capri Manor with Defendant and his brother for about six months. Mother testified that the three lived at Capri Manor from January 2015 to June 2015. K.S. further testified that she had sexual intercourse with Defendant every other day while they lived at Capri Manor. Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence, based on K.S.'s testimony and Mother's testimony, that at least one sexual encounter took place between January 1, 2015 and June 1, 2015 at Capri Manor, as charged in Count 6. *See State v. Tapia*, 2015-NMCA-048, ¶¶ 6-9, 347 P.3d 738 (relying on testimony of the victim and of a provider who examined her to hold that sufficient evidence was presented to meet the evidentiary burden of the element at issue); *see also Lente*, 2019-NMSC-020, ¶ 69 (explaining that statements like "twice a month" or "every time we went camping" are sufficient to meet the requirement that "the child must describe the number of proscribed acts committed with sufficient certainty").

## B.    The State Presented Insufficient Evidence to Support Count 5

**{41}** Defendant argues there was insufficient evidence to prove that misconduct occurred between February 6, 2014 and February 8, 2014, based on Count 5, because there was no testimony of abuse occurring during the narrow relevant time period. We agree that the evidence on this Count was insufficient.

**{42}** Our review of the evidence presented at trial does not support the finding that misconduct occurred during the three-day period of February 6 to February 8, 2014. K.S. testified that in late 2013 and early 2014, she and her family stayed in hotels because they did not have a home. She testified that they stayed at the Motel 6 multiple times during that period. She also testified about an incident at the Motel 6 in February 2014 where police were involved, but did not specify when in February the incident occurred. Regarding that incident, both a police officer and Mother testified that Mother found a vibrator, two condoms, a black tank top with semen on it, pornographic magazines that belonged to Defendant in K.S.'s backpack, and a sex toy in K.S.'s make-up box, all inside the family's motel room at the Motel 6. Mother reported her findings and her suspicion that Defendant and K.S. were having sexual intercourse to the police who then questioned K.S. about it on February 18, 2014. At that time, K.S. denied anything was happening with Defendant, but at trial she admitted previously lying to the police when questioned about activities at the Motel 6. Although K.S. testified that she engaged in sexual intercourse with Defendant at the Motel 6, she did not place that conduct within the required time period, nor did Mother.

**{43}** K.S. also testified that in 2014, she and Defendant started using drugs, including methamphetamine and marijuana. She remembered smoking marijuana at the Motel 6 and she stated that they would "get high and then have sex" and that this was a routine or a habit. Again, she did not place these occurrences within the charging period or even in February 2014. No other evidence was presented regarding the specific dates in February. Accordingly, we conclude that there was insufficient evidence presented to support a conviction on Count 5, and Defendant's conviction on this Count must be vacated.

**CONCLUSION**

**{44}** For the foregoing reasons, we reverse and remand with instructions to vacate Defendant's conviction for Count 5 and affirm his remaining convictions.

**{45}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**